UNITED STATES of America,
Plaintiff–Appellee,

v.

Frank A. HUGS, Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

William E. HUGS, Defendant–Appellant.

Nos. 94–30200, 94–30201.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 3, 1997.

Decided March 17, 1997.

Anthony Gallagher, Chief Federal Defender, Great Falls, MT, for defendant-appellant.

Kris A. McLean, Assistant United States Attorney, Helena, MT, for plaintiff-appellee.

Before: BROWNING, RYMER, and T.G. NELSON, Circuit Judges.

PER CURIAM:

Frank and William Hugs were convicted of taking, attempting to take, and purchasing eagles in violation of the Bald and Golden Eagle Protection Act (BGEPA), 16 U.S.C. § 668(a). The Hugs freely admit · they trapped, shot at, and killed eagles. They assert, however, that they were seeking eagle feathers and parts for their own religious use, and argue that the BGEPA infringes on the First Amendment guarantee of free exercise of religion. They also complain because the district court failed to give several instructions requested by the defense and declined to dismiss the prosecution because of outrageous conduct during the Government's undercover investigation. We affirm.

## I.

Posing as a semiretired contractor interested in hunting, fishing, and purchasing trophy big game heads, state game warden Wes Long learned that William Hugs was willing to sell a live bear cub. After Agent Long purchased the cub, William Hugs invited him to join in a big game hunt for a fee. Agent Long subsequently retained William Hugs and his brother Frank as guides to hunt on the Crow Reservation. During the first two hunts, the Hugs shot at golden eagles and bald eagles, sometimes successfully.

Agent Long learned from the Hugs that they were actively involved in purchasing and selling eagles and eagle parts. Long supplied the Hugs with several dead eagles and artifacts made from eagle parts in return for cash and promises of services.

The investigation concluded with a search of William Hugs' home, during which officers found eagle feather war bonnets, a freshly killed golden eagle, and a videotape depicting William Hugs shooting and killing eagles caught in leg hold traps.

## II.

### A.

The BGEPA generally forbids the taking, possession, purchase, or sale of bald eagles or golden eagles or their parts. 16 U.S.C. § 668(a). Enrolled Indians may obtain eagles or eagle parts for documented religious use through a permit system administered by the U.S. Fish and Wildlife Service. 16 U.S.C. § 668a; 50 C.F.R. § 22.22. The Hugs argue that their right to free exercise of religion is effectively denied by the prohibition of the statute and by the difficulty of obtaining eagles or eagle parts administratively.

A defendant prosecuted under the BGEPA for purely commercial rather than

religious activities may not assert a claim that the free exercise of religion has been infringed by the Act. *United States v. Top Sky,* 547 F.2d 486, 488–89 (9th Cir.1976). However, the trial court found the Hugs' purchase of eagles "may have been for religious purposes." That finding is not clearly erroneous and is sufficient to establish the Hugs' standing to raise a free exercise defense.

■ The Hugs may challenge only the facial validity of the BGEPA and its regulations, however, not the operation of the underlying administrative scheme. The Hugs did not have a permit to take or possess eagles or eagle parts, and did not apply for one. We agree with the decisions of several district courts in this circuit that failure to apply for a permit precludes challenge to the manner in which the Act is administered. *See, e.g., United States v. Lundquist,* 932 F.Supp. 1237, 1242 n. 4 (D.Or.1996); *United States v. Thirty Eight Golden Eagles,* 649 F.Supp. 269, 277 (D.Nev.1986), *aff'd,* 829 F.2d 41 (9th Cir.1987); *cf. Madsen v. Boise State Univ.,* 976 F.2d 1219, 1220–21 (9th Cir.1992) (holding that a plaintiff lacks standing to challenge a rule or policy to which he has not submitted himself by actually applying for the desired benefit).

### B.

■ We analyze a Free Exercise challenge to a neutrally based statute under the Religious Freedom Restoration Act (RFRA), which forbids government from "substantially burdening" the free exercise of religion unless imposition of the burden promotes a compelling government interest and is the least restrictive means of furthering that interest.[1] 42 U.S.C. § 2000bb–1.

■ The evidence established that eagles and eagle parts play a central role in the practice of Native American religions. We do not question that the BGEPA imposed a substantial burden on the practice of such religions by restricting the ability of adherents to obtain and possess eagles and eagle parts.

■ The Hugs do not deny that protection of bald and golden eagles serves a compelling government interest. The legislative history of the BGEPA reflects the importance of protecting eagles because of their religious significance to Native Americans. *See United States v. Dion,* 476 U.S. 734, 740–42, 106 S.Ct. 2216, 2220–22, 90 L.Ed.2d 767 (1986) (discussing legislative history). District courts in this circuit have also found a compelling interest in protecting eagles as a threatened or endangered species. *See, e.g., Lundquist,* 932 F.Supp. at 1241; *United States v. Jim,* 888 F.Supp. 1058, 1063 (D.Or. 1995).

■ We are also satisfied the statute and permit system provide the least restrictive means of conserving eagles while permitting access to eagles and eagle parts for religious purposes.

An applicant for a permit is required to identify the species and number of eagles, parts, or feathers to be taken or acquired, the applicant's tribe, and the pertinent religious ceremony. 50 C.F.R. § 22.22(a). The applicant must attach certifications that the applicant is an Indian and is authorized to participate in the identified ceremony. *Id.* A permit is issued on the application if doing so will be compatible with preservation of the bald or golden eagle. 50 C.F.R. § 22.22(c).

This information is the minimum necessary to assure that eagles and eagle parts will be used for religious purposes. The Hugs do not argue to the contrary. They assert instead that the permit system is unduly burdensome in practice because up to two years may be required to obtain a permit to take, possess, or transport certain types of eagle parts. As we have noted, however, the Hugs have never sought to use the permit system

---

1. The Supreme Court is currently reviewing the constitutionality of the RFRA, *see City of Boerne v. Flores,* —— U.S. ——, 117 S.Ct. 293, 136 L.Ed.2d 212 (1996) (order granting certiorari). We need not await the decision, however, because the standard that would apply if the RFRA were held to be unconstitutional is less stringent than the RFRA test. *See Employment Div., Dep't of Human Resources v. Smith,* 494 U.S. 872, 878–79, 884–85, 110 S.Ct. 1595, 1599–1600, 1603–04, 108 L.Ed.2d 876 (1990) (law with "incidental" effects on religious practice does not violate the Free Exercise Clause if "neutral" and "of general applicability").

and therefore have no standing to challenge the way in which the scheme operates.

The Hugs urge us to follow *United States v. Abeyta*, 632 F.Supp. 1301 (D.N.M.1986), which held the BGEPA unconstitutional. *Abeyta* concluded that the prosecution had not established a compelling need to restrict the taking, possession, and transportation of eagles, that the golden eagle was not endangered, that some eagles could be taken without harm to the remaining population, and that the permit system was "utterly offensive and ultimately ineffectual." *Id.* at 1307. As we have said, however, the record establishes that a compelling government interest underlies the BGEPA, the permit system is the least restrictive means for effectuating that interest, and the defendants are precluded from challenging any deficiencies in the manner in which the permit system operates.

### III.

■ The Hugs argue the district court erred by refusing to instruct the jury that the Government must prove beyond a reasonable doubt that the defendants "did not take [or purchase] the eagle as a sacred object for personal use in religious ceremonies or practices." Instead, the court instructed the jury "that it is no defense to the charges against the defendants that they took or purchased or sold the eagles, eagle feathers or eagle parts for religious purposes without a permit. In other words, Native Americans cannot legally kill, sell, or purchase eagles, eagle feathers or eagle parts without a permit."

The BGEPA contains no exceptions for religious use without a permit. The proffered instruction necessarily assumed the BGEPA was unconstitutional. That may well have been the defendants' "theory of the case," as the Hugs argue, but it presented an issue of law to be determined by the judge, not the jury.

### IV.

Agent Long admittedly acted unlawfully by killing game out of season and on the reservation and by bringing alcoholic beverages onto the reservation. He also acted unlawfully if he provided beer for consumption by a juvenile, a charge he denies.

### A.

The Hugs argue their indictments should have been dismissed because of Agent Long's conduct.

■ The conduct of law enforcement agents may be "so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." *United States v. Russell*, 411 U.S. 423, 431–32, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973). The conduct must be "so grossly shocking and so outrageous as to violate the universal sense of justice." *United States v. Citro*, 842 F.2d 1149, 1152 (9th Cir.1988) (quotation omitted).

■ The Government neither precipitated the Hugs' criminal activity nor impaired their due process rights to a fair prosecution. Agent Long's conduct falls short of the level of outrageousness required to invalidate a prosecution under the due process clause. The violations of liquor laws, even if true, were unrelated to the Hugs' crimes. Long's participation in hunting activities, while improper, also did not violate the defendants' right to due process. The Hugs were involved in the taking, possession, and sale of eagle parts prior to the undercover activity. *Cf. United States v. Stenberg*, 803 F.2d 422, 430–31 (9th Cir.1986) (while killing of wildlife by government agents raises significant questions regarding extent to which serious crimes may be committed by agents to prevent others from committing similar offenses, no outrageous government conduct where defendants' illegal activity was ongoing). Agent Long testified that he occasionally shot an animal, but only when necessary to maintain his credibility as a supposed hunter, that he shot only animals from more abundant species, and that he shot no eagles.

### B.

■ The Hugs argue that the district court should have instructed the jury regarding the illegality of Agent Long's acts to assist the jury in evaluating the agent's cred-

ibility. A defendant is not entitled to a particular form of instructions so long as the instructions given fairly and adequately cover the defendant's theories of defense. *United States v. Solomon,* 825 F.2d 1292, 1295 (9th Cir.1987). The instructions regarding credibility given by the district court fully met those requirements.

## V.

During deliberations, the jury inquired about the definition of "sale" in the context of a BGEPA violation. The court responded that "a sale consists of passing of title from the seller to the buyer for a price in money or its equivalent." The Hugs argue that the court should have addressed the jury's confusion directly with an instruction tailored to the language and framework of the statute.

The Hugs could not have been prejudiced by the court's definition because they were not convicted of any counts charging "sell" or "sale." If the Hugs are arguing that the district court should have instructed the jury on the definition of "purchase," that objection was not raised at trial, and nothing suggests an instruction defining "purchase" was necessary to supplement the presumed common understanding of the jury. The two "purchase" counts on which the Hugs were convicted involved transactions in which the defendants agreed to provide services to Agent Long in return for dead eagles. The promise to provide services was sufficient consideration. The fact that cash was not exchanged did not bar conviction.

AFFIRMED.