**UNITED STATES of America, Plaintiff,**

v.

**Stephen Paul DUNIFER, Defendant.**

**No. C 94–03542 CW.**

United States District Court,
N.D. California.

June 16, 1998.

Mark St. Angelo, Patricia A. Duggan, U.S. Attorney's Office, San Francisco, CA, David Silberman, F.C.C., Office of the General Counsel, Washington, DC, for U.S.

Louis N. Hiken, San Francisco, CA, M. Allen Hopper, San Francisco, CA, for Stephen Paul Dunifer.

Alan Alan Korn, Berchenko & Korn, San Francisco, CA, amicus curiae.

Peter Franck, Peter Franck Law Offices, San Francisco, CA, pro se.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING PERMANENT INJUNCTION

WILKEN, District Judge.

### BACKGROUND

This case first came before the Court in 1994 on Plaintiff United States' motion for injunctive and declaratory relief against Defendant Stephen Paul Dunifer for violation of 47 U.S.C. § 301, which prohibits the operation of a radio station without a license. In opposition to the United States' motion, Mr. Dunifer did not dispute that he was operating a micro radio station, "Free Radio Berkeley", without having applied for a license.[1] Instead, Mr. Dunifer raised several affirmative defenses challenging Federal Communication Commission ("FCC") regulations governing the licensing of micro radio broadcasting.

Mr. Dunifer claimed that new technology enables micro radio stations such as his to broadcast locally, on frequencies between those of higher-powered stations, without causing interference with those stations. According to Mr. Dunifer, small, local, poorly-financed stations would offer program content different from that provided by larger,

---

1. Mr. Dunifer refers to his low-powered radio station as a micro radio station. FCC regulations apply the term *Class D station* to any station, such as "Free Radio Berkeley", that operates with minimum effective radiated power of less than 100 watts.

necessarily well-financed, stations. Mr. Dunifer argued that he should not be enjoined from broadcasting because the FCC's refusal to license micro radio stations amounts to a content-based restriction on speech that violates the First Amendment and is not justified under the FCC statutory mandate to regulate in the public convenience, interest and necessity.[2]

The United States did not respond directly to Mr. Dunifer's constitutional attack on the regulations, but instead argued that the FCC's statutory authority to regulate and license broadcasters is constitutional.

The Court ruled that, on the limited record before it, the United States had shown probable success on the merits on the issue that Mr. Dunifer had broadcast without a license, but that the United States had failed to show a probability of success on the constitutional issues raised by Mr. Dunifer. See Memorandum and Order Denying Plaintiff's Motion For Preliminary Injunction and Staying This Action at 3–4. For that reason, the Court denied the motion for a preliminary injunction. Under the doctrine of primary jurisdiction, the Court stayed the case so that the issue of the constitutionality of the Class D regulations could first be addressed by the FCC either in the context of Mr. Dunifer's pending forfeiture proceeding[3] or in the context of the FCC's rule-making powers. *Id.* at 10.

On August 2, 1995, the FCC issued its Memorandum Opinion and Order in Mr. Dunifer's forfeiture proceeding ("Forfeiture Order"). In the Forfeiture Order, the FCC concluded that the Class D regulations do not violate the First Amendment or the FCC's mandate to regulate in the public interest.

After the FCC issued the Forfeiture Order, the United States filed a motion for summary judgment in this case. In the summary judgment motion, the United States still did not discuss the merits of Mr. Dunifer's constitutional claims. Instead it argued that, by statute, this Court lacks jurisdiction to hear Mr. Dunifer's challenge to the Class D regulations because exclusive jurisdiction over any challenge to FCC regulations is vested in the courts of appeals.[4] Mr. Dunifer responded that the Court had jurisdiction over his affirmative defenses and renewed his First Amendment arguments.[5]

The Court entered an Order Denying Plaintiff's Motion for Summary Judgment Without Prejudice and Requesting Further Briefing, ruling that 47 U.S.C. § 401(a), which provides the district court with jurisdiction over the United States' charge of broadcasting without a license, also provides the Court with jurisdiction over any valid defense to the charge. However, the Court noted that neither party had addressed the issue of whether Mr. Dunifer's claim that the

2. The FCC regulatory scheme currently precludes the licensing of Class D stations. *See e.g.,* 47 C.F.R. § 73.512(c) (except in the state of Alaska, the FCC will not accept new applications for licenses from Class D stations); 47 C.F.R. § 73.211(a) (FM stations must operate with a minimum effective radiated power of 100 watts); 47 C.F.R. § 73.511(a) (no new noncommercial Educational station will be authorized with less than the minimum power requirement for Class A stations [100 watts]). (Hereinafter, "Class D regulations"). However, any of the FCC's rules may be waived on petition if good cause is shown. *See* 47 C.F.R. § 1.3.

3. In 1993, before the United States filed its complaint in this Court, the FCC had imposed a monetary forfeiture against Mr. Dunifer. Mr. Dunifer had filed an application for review of the forfeiture order with the FCC, raising the same constitutional arguments that he raised in response to the motion for preliminary injunction. At the time the motion for preliminary injunction

was argued before the Court, the FCC had not yet responded to Mr. Dunifer's application for review.

4. Pursuant to 47 U.S.C. § 402(b)(1), appeals of the FCC's denial of an application for a license or waiver of its rules must be taken to the United States Court of Appeals for the District of Columbia. Pursuant to 47 U.S.C. § 402(a) and 28 U.S.C. § 2342, appeals of any final order of the FCC may be taken to the court of appeals for any circuit.

5. Mr. Dunifer did not reassert other claims that he had raised in his opposition to the United States' motion for injunctive and declaratory relief, namely that the FCC promulgated the Class D regulations in violation of its authority under the commerce clause and that the Class D regulations violate the United Nations Declaration on Human Rights, the International Covenant on Civil and Political Rights, and the American Convention on Human Rights.

Class D regulations are unconstitutional is a valid defense in an action brought by the United States to enjoin him from broadcasting without a license, given that he has never applied for a license. The Court ordered further briefing on this issue, which both parties have filed. Having considered all the papers filed by the parties, the Court GRANTS the United States' motion for summary judgment and ENJOINS Mr. Dunifer from broadcasting without a license. This ruling is not based on the merits of Mr. Dunifer's criticisms of the FCC's refusal to license micro broadcasters. As discussed below, Mr. Dunifer does not have standing as required by Article III of the United States Constitution to challenge the Class D regulations as they have been applied to him; they have not been applied to him because he has never applied for a license. Mr. Dunifer also lacks standing to assert a challenge to the regulatory scheme on the ground that it is unconstitutional in every conceivable application. Mr. Dunifer does have standing to raise his claim that the regulations are overbroad, but this claim fails.

## DISCUSSION

### I. Article III Standing

■ Article III of the Constitution of the United States limits the jurisdiction of federal courts to deciding cases and controversies. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 559, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The doctrine of standing is a core component of the case-or-controversy requirement. *See id.* 504 U.S. at 560. The litigant invoking federal jurisdiction must establish the three minimum requirements of standing: (1) a litigant must have suffered an actual and concrete injury consisting of "an invasion of a legally protected interest"; (2) there must be a causal connection between the injury and the conduct of which the litigant complains; and, (3) there must be a likelihood that the injury will be redressed by a favorable judicial decision. *See id.* at 560–61.

■ Mr. Dunifer argues that he need not establish standing because standing must be shown by plaintiffs who invoke federal court jurisdiction, not by defendants like himself. It is true that the doctrine of standing is usually raised by the defendant, because the plaintiff is the party who is invoking the jurisdiction of the court. The Seventh Circuit has stated that the standing doctrine applies only to plaintiffs. *See Wynn v. Carey,* 599 F.2d 193, 196 (7th Cir.1979). The Ninth Circuit, however, in at least two cases, has analyzed whether defendants have standing to raise, as an affirmative defense, the unconstitutionality of the statute and regulations that form the basis of the government's case-in-chief. *See United States v. Hugs,* 109 F.3d 1375, 1378 (9th Cir.1997); *United States v. Thirty Eight (38) Golden Eagles or Eagle Parts,* 649 F.Supp. 269, 274, 276 (D.Nev. 1986), *aff'd,* 829 F.2d 41 (9th Cir.1987).

In *Hugs,* the defendants were convicted of taking and purchasing eagles in violation of the Bald and Golden Eagle Protection Act ("BGEPA"). *Id.* at 1377. Regulations allowed enrolled Native Americans to obtain eagles or eagle parts for religious use through a permit system. *Id.* The defendants had not applied for a permit. *Id.* The defendants admitted they had trapped and killed eagles, but defended their actions by arguing that their right to the free exercise of their religion was infringed upon by the existence of the BGEPA and by the difficulty of obtaining a permit. *Id.* The Ninth Circuit ruled that the defendants could bring a facial challenge to the BGEPA and its regulations, but because they had failed to apply for a permit, they lacked standing to defend themselves based on an as-applied challenge. *Id.* at 1378–79. Similarly, in *Golden Eagles,* a forfeiture action brought by the government, the court ruled that a claimant who had failed to apply for a permit as required by the BGEPA did not have standing to defend against the forfeiture with an as-applied challenge to the BGEPA or its implementing regulations, but did have standing to bring a facial challenge. 649 F.Supp. at 274, 276.

■ Where the defendant asserts an affirmative defense requiring the litigation of issues not encompassed in the plaintiff's case-in-chief, the defendant is in a similar situation on those issues to a plaintiff who is invoking the jurisdiction of the court. *See*

*e.g. Federal Deposit Ins. Corp. v. Main Hurdman,* 655 F.Supp. 259, 268 (E.D.Cal. 1987) (concluding that defendant must have Article III standing to pursue affirmative defense). Therefore, the Court concludes that Mr. Dunifer must establish standing to assert his constitutional defenses.

■ Mr. Dunifer admits that he has not applied for a license or a waiver pursuant to the Class D regulations. Thus, the Class D regulations have not been applied to him and he has no standing to bring an as-applied challenge to them.

■ Mr. Dunifer argues that he should be excused from applying for a license because doing so would be futile. Some circuits have excused on grounds of futility the threshold standing requirement that the plaintiff submit to the policy being challenged by applying for the benefit regulated by that policy. *See e.g. Jackson–Bey v. Hanslmaier,* 115 F.3d 1091, 1096 (2nd Cir.1997). Futility can be established only where an adverse decision by the agency is a certainty. *See Randolph–Sheppard Vendors of America v. Weinberger,* 795 F.2d 90, 105 (D.C.Cir. 1986). An adverse decision is certain if the agency lacks, or believes itself to lack jurisdiction, or if an agency has "articulated a very clear position on the issue which it has demonstrated it would be unwilling to reconsider." *Id.; accord Clouser v. Espy,* 42 F.3d 1522, 1532–33 (9th Cir.1994) (regarding administrative exhaustion requirement of Administrative Procedures Act).

Mr. Dunifer argues that his application to the FCC for a license would be futile because the FCC lacks jurisdiction to determine the constitutionality of regulations it has promulgated, because the FCC has clearly stated in other proceedings that it will not decide the constitutional issues he raises, and because the FCC has never granted a waiver to a micro radio station.

■ Mr. Dunifer's contention that the FCC does not have jurisdiction to determine the constitutionality of its regulations is incorrect. *See e.g. Meredith Corp. v. FCC,* 809 F.2d 863, 872, 874 (D.C.Cir.1987) (holding that FCC was required to respond to plaintiff's constitutional arguments and remanding

case to FCC to consider the constitutionality of FCC's fairness doctrine on its face and as applied to plaintiff); *WAIT Radio v. FCC,* 418 F.2d 1153, 1156 (D.C.Cir.1969) (remanding FCC's denial of an applicant's waiver request to FCC to reconsider the First Amendment issue raised therein). The cases cited by Mr. Dunifer are inapposite because they refer to agencies other than the FCC, *see e.g. Gilbert v. Nat'l Transp. Safety Bd.,* 80 F.3d 364 (9th Cir.1996), or address an agency's jurisdiction to determine the constitutionality of governing statutes, *see e.g. Liu v. Waters,* 55 F.3d 421, 425 (9th Cir.1995) (explaining prior cases incorrectly stated that the Board of Immigration Appeals lacked jurisdiction to adjudicate constitutional issues and that Board lacks jurisdiction only to determine constitutionality of governing statutes and regulations).

■ Mr. Dunifer's next contention is that applying for a license would be futile because he has fairly presented the constitutional issues to the FCC in his Application for Review of the Forfeiture Order and the FCC has clearly indicated in its decision on the Application that it would not address these issues. The United States counters that Mr. Dunifer's presentation of the constitutional issues in his forfeiture proceeding is not the equivalent of applying for a license and requesting a waiver.

A correctly plead application for a license to broadcast on an FM noncommercial educational radio station must show compliance with many rules, and a request for a waiver of any of the rules must be included with the license application. *See* Declaration of Linda Blair, Acting Chief, Audio Services Division, Mass Media Bureau, FCC at 3:10–14; 47 C.F.R. § 73.3533(a)(5). The premise of a waiver application is that the rule to be waived is valid, but that the rule is not in the " 'public interest' if extended to [the] applicant who proposes a new service that will not undermine the policy, served by the rule, that has been adjudged in the public interest." *WAIT Radio,* 418 F.2d at 1157. FCC regulations do not limit which rules may be waived, upon a proper showing. *See* Blair Decl. at 3; 47 C.F.R. § 1.3. In response to a properly presented waiver application which

includes factual material to support a non-frivolous First Amendment claim, the agency must address the constitutional issues raised by the applicant. *See WAIT Radio,* 418 F.2d at 1156. *See also Rio Grande Family Radio Fellowship, Inc. v. FCC,* 406 F.2d 664, 666 (D.C.Cir.1968) (to be considered, an application for a waiver must "plead with particularity the facts and circumstances which warrant such action"); *United States v. Storer Broadcasting Co.,* 351 U.S. 192, 205, 76 S.Ct. 763, 100 L.Ed. 1081 (1956) (FCC need not grant waiver unless application sets out "adequate reasons why the rules should be waived").

Based upon the documents Mr. Dunifer has filed with the Court, it appears that Mr. Dunifer's arguments to the FCC in his forfeiture proceeding were that the Class D rules generally are not valid because they violate the First Amendment and are not in the public interest. *See* Dunifer Decl. in Support of Opposition to Plaintiff's Motion for Preliminary Injunction, Exs. A and B. It does not appear that Mr. Dunifer argued or presented evidence to support the position that the Class D regulations, as applied to his new service, are not in the public interest. For this reason, the fact that the FCC declined to address the constitutional issues in the context of the forfeiture proceeding does not mean the FCC will also decline to address the constitutional issues when properly raised in an application for a license and a request for a waiver. *See also Writers Guild of America, West, Inc. v. American Broadcasting Co., Inc.,* 609 F.2d 355, 364 (9th Cir.1979) (dismissing claim of futility because FCC's position in a proper future administrative proceeding could not be inferred from the FCC's position in an adversarial context).

In response to Mr. Dunifer's claim that the FCC has never granted a waiver to a Class D broadcaster, the United States cites *Turro v. FCC,* 859 F.2d 1498, 1500 n. 1 (D.C.Cir. 1988), in which the court noted that the FCC had granted two such waivers.

Finally, Mr. Dunifer makes an effort, in a footnote at the end of his supplemental brief, to overcome the consequences of his failure to apply for a license by stating that he is "in effect, challenging the statutes [47 U.S.C. § 301, prohibiting broadcasting without a license, and 47 U.S.C. § 401, authorizing the government to enjoin anyone who broadcasts without a license], as applied to him via the regulations." This argument fails because only the statutes, not the regulations, have been applied to Mr. Dunifer. Throughout his opposition to the United States' original summary judgment motion, Mr. Dunifer stated that it is not the statutes, but the FCC Class D regulations that he is challenging. If Mr. Dunifer were challenging the constitutionality of the statutes he would fail because the statutes have been found to be constitutional by the Supreme Court. *See Nat'l Broadcasting Co. v. United States,* 319 U.S. 190, 227, 63 S.Ct. 997, 87 L.Ed. 1344 (1943) ("The right of free speech does not include, however, the right to use the facilities of radio without a license. The licensing system established by Congress in the Communications Act of 1934 was a proper exercise of its power over commerce."); *Red Lion Broadcasting Co. v. FCC,* 395 U.S. 367, 389, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969); *see also, Action for Children's Television v. FCC,* 59 F.3d 1249, 1260, 1262 (D.C.Cir.1995), *cert. denied,* 516 U.S. 1072, 116 S.Ct. 773, 133 L.Ed.2d 726 (1996) (statutory scheme authorizing the FCC to enforce forfeitures is constitutional on its face, does not lack appropriate safeguards and was not unconstitutional as applied).

Because Mr. Dunifer has never applied for a broadcasting license or a waiver of the regulations disallowing applications by Class D broadcasters, he does not have standing to challenge those regulations.

## II. Standing Under First Amendment Jurisprudence

Mr. Dunifer argues that he has standing to raise a facial challenge to the Class D regulations because, in First Amendment cases, the Supreme Court has relaxed the general rules of standing.

In a recent case, the Ninth Circuit explained that there are two ways in which legislation can be challenged on the ground that it is unconstitutional on its face. *See Foti v. City of Menlo Park,* 146 F.3d 629, 635

(9th Cir.1998) (citing *Members of City Council of City of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 796–98, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984)). The first type of challenge seeks to establish that the legislation is unconstitutional in every conceivable application. *See Vincent,* 466 U.S. at 796. This type of facial challenge does "not involve any departure from the general rule that a litigant only has standing to vindicate his own constitutional rights." *Id.*

■ As discussed above, Mr. Dunifer lacks standing to bring an as-applied challenge to the Class D regulations. Therefore, he lacks standing to claim that the Class D regulations are unconstitutional in every conceivable application. In fact, Mr. Dunifer acknowledges that requiring micro radio broadcasters to be licensed is necessary and constitutional. Even with advanced technology, not all micro radio stations could broadcast without causing interference with other radio stations. Therefore, application of the Class D regulations, in conjunction with considering waiver requests, is not unconstitutional in every conceivable instance.

■ The Supreme Court has recognized a doctrine in First Amendment cases that does relax the usual standing requirement. The overbreadth doctrine allows a litigant to claim that the legislation in question prohibits such a broad range of protected speech that it may chill the speech of third parties, even if the litigant's own speech is not protected. *See id.* at 798; *Foti,* 146 F.3d at 635. In Mr. Dunifer's Supplemental Brief filed in response to the Court's request for further briefing, he argues that the Class D regulations are overbroad and act as an impermissible prior restraint on speech.

Claims of facial overbreadth have been allowed against statutes that regulate the time, place and manner of communicative conduct, including licensing statutes that delegate standardless discretionary power to administrators resulting in unreviewable prior restraints on First Amendment rights. *See Broadrick v. Oklahoma,* 413 U.S. 601, 612–13, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215,

223, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990). The overbreadth doctrine was enunciated by the Supreme Court in *Thornhill v. Alabama,* 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940). In that case, Thornhill was convicted of violating a statute prohibiting a person without just cause or legal excuse to go near or to picket business premises. Thornhill defended himself on the ground that the statute was unconstitutional on its face. *Id.* 310 U.S. at 91. The Court explained that Thornhill need not have applied for a license to challenge the statute because "the character of the evil inherent in a licensing system ... is not merely the sporadic abuse of power by the censor but the pervasive threat inherent in its very existence that constitutes the danger to freedom of discussion.' One who might have had a license for the asking may therefore call into question the whole scheme of licensing when he is prosecuted for failure to procure it." *Id.*

In *Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 150, 152, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969), the Court invalidated a city ordinance that granted to the City Commission unbridled power to prohibit any parade, procession or demonstration in the city's streets, stating that "a person faced with ... an unconstitutional licensing law may ignore it and engage with impunity in the exercise of the right of free expression for which the law purports to require a license". In *City of Lakewood v. Plain Dealer Publishing Co.,* 486 U.S. 750, 755–56, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988), the Court permitted a facial attack on a city ordinance that gave the mayor "unfettered discretion to deny annual newsrack applications and unbounded authority to condition the permit on any additional terms he deems 'necessary and reasonable.' "

■ The United States argues that the First Amendment cases addressing overbroad licensing schemes do not apply here because the First Amendment right of freedom of speech does not include the right to broadcast over radio frequencies without a license. Although the right to broadcast is not as broad as the right to speak, write or publish, it does implicate the First Amend-

ment. *See Red Lion Broadcasting Co. v. FCC,* 395 U.S. 367, 386, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969) ("Although broadcasting is clearly a medium affected by a First Amendment interest, differences in the characteristics of new media justify differences in the First Amendment standards applied to them").

Therefore, if the regulatory scheme that Mr. Dunifer challenges were unconstitutionally overbroad on its face, the fact that Mr. Dunifer has not applied for a license would not deprive him of standing to challenge it.

■ Mr. Dunifer proffers two theories in support of his argument that the regulations constitute an overbroad licensing scheme creating a prior restraint on speech. First, citing *Shuttlesworth,* 394 U.S. at 150 and *City of Lakewood,* 486 U.S. at 772, Mr. Dunifer argues that because no written rules or regulations exist regarding waiver of the Class D regulations, the FCC has unbridled discretion to decide who will be granted a waiver and permitted to operate a Class D radio station. Mr. Dunifer reasons that the FCC does not have standards for granting waivers because in his Application for Review of the FCC's Forfeiture Order he requested that the FCC provide him with such standards, and the FCC did not respond. The United States asserts that Mr. Dunifer's request for standards, appearing in a footnote in his Application for Review, is not equivalent to filing a license application with a waiver request. Although the United States does not provide to the Court any evidence of what guidelines the FCC uses to determine who will be granted a waiver, it cites *WAIT Radio,* 418 F.2d at 1159.

As noted above, in *WAIT Radio,* the D.C. Circuit remanded the FCC's denial of an applicant's waiver request to the FCC for a clearer statement of reasons for its denial. *Id.* at 1156. The court explained that the FCC must give serious consideration to meritorious applications for waiver, including nonfrivolous First Amendment claims when supported by adequate factual material. *Id.* at 1156–57. Pursuant to *WAIT Radio,* the FCC is bound to consider seriously any correctly plead application for a waiver that Mr. Dunifer files. If the FCC denies Mr. Duni-

fer's application for a waiver, it must "articulate with clarity and precision its findings and the reasons for its decisions." *Id.* at 1156. The Court finds that these judicial guidelines, within the context of the FCC's mandate to administer for the public interest, convenience and necessity, provide sufficient standards for the FCC's decision whether to grant or deny a waiver application filed by Mr. Dunifer or any other aspiring Class D broadcaster.

■ Second, Mr. Dunifer argues, citing *Bernstein v. United States Dep't of State,* 974 F.Supp. 1288 (N.D.Cal.1997) and *Freedman v. Maryland,* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965), that the FCC licensing scheme is overbroad and acts as a prior restraint on speech because it lacks procedural safeguards. In *Bernstein,* the court stated, "The danger inherent in prior restraints is largely procedural, in that they bypass the judicial process and locate in a government official the delicate responsibility of passing on the permissibility of speech." *Bernstein,* 974 F.Supp. at 1304 (citing *Freedman v. Maryland,* 380 U.S. at 58). In *Freedman,* the Court established that three procedural safeguards were essential for a licensing scheme to pass constitutional scrutiny: (1) the licensor must decide whether to issue the license within a specified and reasonable time; (2) prompt judicial review must be available in the event the license is erroneously denied; and, (3) the censor must bear the burden of going to court and must bear the burden of proof in court. *Freedman,* 380 U.S. at 58–60; *see also FW/PBS,* 493 U.S. at 227(discussing *Freedman* requirements). The third safeguard, however, is only necessary in licensing schemes that act as a censorship system. *See id.,* at 228–229. Because the Class D regulations do not act as a censorship system, only the first two *Freedman* safeguards are required.

The FCC regulatory scheme sets forth adequate procedures for processing applications for a license and requests for a waiver, thus fulfilling the first Freedman requirement. *See* 47 C.F.R. § 73.3573 (providing procedures for processing FM broadcast station applications); 47 C.F.R. § 1.3 (waiver provision). By statute, a denial of an appli-

cation for a license or request for a waiver is appealable to the Court of Appeals for the District of Columbia, fulfilling the second *Freedman* requirement. *See* 47 U.S.C. § 402(b)(1). Moreover, any party may submit a petition for the issuance, amendment or repeal of any FCC rule or regulation. *See* 47 C.F.R. § 1.401(a). A petition for rule-making is subject to the procedures set forth in 47 C.F.R. Part 1 Subpart C. Any denial of a petition for the issuance, amendment or repeal of a rule or regulation is a final order of the FCC subject to appeal in any court of appeals. *See* 47 U.S.C. § 402(a); 28 U.S.C. § 2342. The Court finds that the regulatory scheme here withstands constitutional scrutiny because it specifies procedures which the FCC must follow and it provides for judicial review of any improper FCC ruling.

Thus, Mr. Dunifer's claims that the regulations are unconstitutional in every conceivable application and that they are overbroad must fail.

### CONCLUSION

For the foregoing reasons, the United States' motion for summary judgment must be GRANTED. Accordingly, Mr. Dunifer, and all persons in active concert or participation with him, are hereby ENJOINED:

(a) From making radio transmissions within the United States unless and until they first obtain a license from the FCC;

(b) From doing any act, whether direct or indirect, to cause unlicensed radio transmissions or to enable such radio transmissions to occur.

Judgment shall enter for Plaintiff. Each party shall bear its own costs.

IT IS SO ORDERED.