# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          v.

MARIO MANUEL VASQUEZ-RAMOS,
          *Defendant-Appellant.*

No. 06-50553

D.C. No.
CR-05-00581-SJO

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          v.

LUIS MANUEL RODRIGUEZ-
MARTINEZ, also known as Luis
Manuel Hernandez-Rodriguez,
          *Defendant-Appellant.*

No. 06-50694

D.C. No.
CR-05-00579-SJO

ORDER AND
OPINION

Appeal from the United States District Court
for the Central District of California
S. James Otero, District Judge, Presiding

Argued and Submitted
March 5, 2008—Pasadena, California

Filed June 27, 2008

Before: Alfred T. Goodwin, Mary M. Schroeder, and
Richard C. Tallman, Circuit Judges.

Per Curiam Opinion

7587

**COUNSEL**

Robison D. Harley, Jr., Santa Ana, California, for appellant Mario Manuel Vasquez-Ramos.

Marilyn E. Bednarski, Kay, McLane & Bednarski, LLP, Pasadena, California, for appellant Luis Manuel Rodriguez-Martinez.

Robert J. Lundman, Environment & Natural Resources Division, U.S. Department of Justice, Washington, D.C., for the appellee.

**ORDER**

The opinion published April 10, 2008, and appearing at 522 F.3d 914, is hereby withdrawn. Due to a printer's error, the published opinion does not reflect the opinion as filed by panel. The opinion filed concurrently with this order reflects the opinion actually filed by the panel with the clerk and should be published by the printer as the panel's opinion forthwith.

Defendant-Appellant Mario Vasquez-Ramos's Motion for Joinder in Co-Appellant's Petition for Rehearing and Suggestion for Rehearing En Banc is GRANTED.

The panel has voted to deny the Defendants-Appellants' joint petition for panel rehearing. Judges Schroeder and Tallman vote to deny the petition for rehearing en banc and Judge Goodwin so recommends.

The full court has been advised of the petition for rehearing en banc and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

The petition for panel rehearing and the petition for rehearing en banc as to both cases is DENIED. No further petitions for rehearing or rehearing en banc shall be entertained.

---

## OPINION

PER CURIAM:

Mario Manuel Vasquez-Ramos and Luis Manuel Rodriguez-Martinez (Defendants) were charged by information for possessing feathers and talons of bald and golden eagles and other migratory birds without a permit in violation of the Bald and Golden Eagle Protection Act (BGEPA), 16 U.S.C. §§ 668—668d, and the Migratory Bird Treaty Act (MBTA), 16 U.S.C. §§ 703—712. They moved to dismiss the information claiming that prosecuting their possession of the feathers and talons violated the Religious Freedom Restoration Act (RFRA), 42 U.S.C. §§ 2000bb-1 to 2000bb-4. In *United States v. Antoine*, 318 F.3d 919, 924 (9th Cir. 2003), under nearly identical facts, we held that there was no RFRA violation. *Antoine* remains binding law in our circuit, and we affirm the district court's order denying Defendants' motion to dismiss.

**I**

**A**

BGEPA makes it illegal to possess bald or golden eagles or parts of bald or golden eagles without a permit. 16 U.S.C.

§ 668. Congress and the United States Department of the Interior have crafted a permitting system and parts repository to regulate the possession and distribution of eagles and parts of eagles in a manner that "is compatible with the preservation of" the bald and golden eagle. 16 U.S.C. § 668a; 50 C.F.R. § 22.22. Permits authorizing acquisition and possession of whole or parts of eagles may be issued "for the religious purposes of Indian tribes." 16 U.S.C. § 668a. However, only members of federally-recognized Indian tribes may apply for and receive permits. 50 C.F.R. § 22.22. Unless received through inheritance or gift, *see* 50 C.F.R. § 22.22(a)(1), permit-eligible tribal members may obtain eagles and parts of eagles only through the National Eagle Repository in Colorado, *see* 16 U.S.C. § 668(a); U.S. Fish & Wildlife Service, Questions and Answers About the National Eagle Repository, http://www.fws.gov/mountain-prairie/law/eagle/ (last visited Apr. 3, 2008).

The Repository is the main collection point for salvaged bald and golden eagle carcasses, parts, and feathers. Requests for eagle carcasses or parts are received by the Repository and are generally filled on a first-come, first-served basis. The time it takes for a request to be filled varies between three and a half years for a whole bird and ninety days for twenty lower-quality feathers. Although there has been an increase in the number of eagle carcasses being recovered in the wild and sent to the Repository, the number of requests has also increased, extending the wait.

The Repository and permitting systems operate in recognition of the fact that demand exceeds supply and that wait times are excessive. Supply and demand have also given rise to black market trading in illegally taken eagles or parts of eagles. *See* S. Rep. No. 71-180, at 2 (1930) (noting the "considerable traffic in eagle quills and plumage" and the corresponding need to criminalize not only killing and capture of eagles, but also possession, sale, and transport of eagles and their feathers); *United States v. Hugs*, 109 F.3d 1375, 1377

(9th Cir. 1997) (per curiam) (where the defendants claimed that they shot bald and golden eagles because of the "difficulty of obtaining eagles or eagle parts administratively").

The MBTA also makes it illegal to possess any migratory birds, including bald and golden eagles. 16 U.S.C. § 703. Permits may be issued for falconry, propagation, scientific collection, rehabilitation, depredation, and taxidermy, among other purposes. 16 U.S.C. § 704; 50 C.F.R. §§ 21.21—.31. There is no specific exemption for Native American religious use, but "the United States has adopted a policy under which members of federally-recognized Indian tribes may possess migratory bird parts, while non-members may not and may be prosecuted for such possession." *See United States v. Eagleboy*, 200 F.3d 1137, 1138 (8th Cir. 1999).

**B**

In 2002, law enforcement officers acting in conjunction with the United States Fish and Wildlife Service, which was investigating the killing of bald eagles in captivity at the Santa Barbara Zoo, executed search warrants and found parts and feathers of eagles and other migratory birds in Defendants' residences. Defendants claim to have received the feathers during Native American religious ceremonies and to have used them for religious worship. Defendants did not have and could not obtain permits to possess the parts and feathers because they are not members of federally-recognized Indian tribes.

The United States filed a two-count information against each Defendant. Count One charged Defendants with knowingly possessing feathers and talons of bald and golden eagles without a permit in violation of BGEPA. Count Two charged Defendants with wilfully possessing feathers and talons of bald and golden eagles and red-tailed hawks without a permit in violation of MBTA.

Defendants filed a joint motion to dismiss the information, claiming that their prosecution impermissibly burdened their religious practice under RFRA. The government responded that the burden on Defendants' religious practice was the least restrictive means of advancing the government's compelling interest in protecting eagles. The district court agreed. It found the result to be controlled by our holding in *United States v. Antoine* and denied Defendants' motion to dismiss. Defendants entered conditional guilty pleas and filed this timely appeal.

## II

We review de novo a district court's denial of a motion to dismiss an information based on the interpretation of a federal statute. *See United States v. Gorman*, 314 F.3d 1105, 1110 (9th Cir. 2002); *United States v. Sandia*, 188 F.3d 1215, 1217 (10th Cir. 1999) ("The district court's decision to deny the motion to dismiss based on defendant's religious rights under RFRA is a question of law that we review de novo."). Whether application of a federal law violates RFRA is a question of statutory construction for the court, not a question of fact. *See Hugs*, 109 F.3d at 1379.

## III

[1] Under RFRA the government cannot "substantially burden a person's exercise of religion even if the burden results from a rule of general applicability" unless it demonstrates that "the burden to the person . . . (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(a)-(b). The district court found, and the government concedes, that Defendants' sincere religious beliefs are substantially burdened by BGEPA and MBTA's permit requirements. The government must demonstrate that criminalizing Defendants' possession of eagle parts and feathers is the least restrictive means of achieving a com-

pelling interest. *See Gonzales v. O Centro Espirita Benefi-cente Uniao do Vegetal*, 546 U.S. 418, 424 (2006).

**[2]** We faced the same issue in *United States v. Antoine*, 318 F.3d at 920. There, the defendant was charged with violating BGEPA after he brought feathers and eagle parts from Canada into the United States and then swapped them for money and other goods as part of the native trading custom of "potlatch." *Id.* The defendant moved to dismiss his prosecution, claiming that he was exempt from BGEPA under RFRA. *Id.* We rejected his claim, holding that "[t]he government has a compelling interest in eagle protection that justifies limiting supply to eagles that pass through the repository, even though religious demand exceeds supply as a result. Any allocation of the ensuing religious burdens is least restrictive because reconfiguration would necessarily restrict *someone's* free exercise." *Id.* at 924.

We are bound by circuit precedent unless there has been a substantial change in relevant circumstances, *see id.* at 922, or a subsequent en banc or Supreme Court decision that is clearly irreconcilable with our prior holding, *see Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc). Neither circumstance is present here.

## A

**[3]** In July 2007, the Department of the Interior removed the bald eagle from the Endangered Species List. *See* Removing the Bald Eagle from the List of Endangered and Threatened Wildlife, 72 Fed. Reg. 37,346 (July 9, 2007). Defendants urge us to conclude that given the current census estimates of pairs of nesting eagles in the continental United States there has been sufficient recovery of eagle populations such that the government's interest in eagle protection is no longer compelling. But Congress passed BGEPA recognizing that "the bald eagle is [not] a mere bird of biological interest but a symbol of the American ideals of freedom." Public Laws June 8,

1940, ch. 278, pmbl., 54 Stat. 250 (1940). As the Tenth Circuit has recognized, "The bald eagle would remain our national symbol whether there were 100 eagles or 100,000 eagles. The government's interest in preserving the species remains compelling in either situation." *United States v. Hardman*, 297 F.3d 1116, 1128 (10th Cir. 2002) (en banc).

**[4]** When the Department of the Interior issued the final rule removing the bald eagle from the list of endangered or threatened species, it repeatedly emphasized the continuing protection afforded by BGEPA and MBTA to reduce the threat to bald eagles and "prevent the likelihood of endangerment for the bald eagle in the lower 48 States." 72 Fed. Reg. 37,346; 37,366; 37,372. We conclude, despite the fact that the bald eagle is no longer considered endangered or threatened,[1] the United States continues to have a compelling interest in protecting eagles by enforcing BGEPA and MBTA. *See Antoine*, 318 F.3d at 924.

**B**

Defendants also argue that the Supreme Court's decision in *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, "constitutes a significant shift in the legal terrain surrounding the appropriate application of . . . RFRA," which undermines our holding in *Antoine*. We disagree.

O Centro Espírita Beneficente União do Vegetal is a 130-member religious group with its roots in the Amazon rainforest that drinks a sacramental tea, *hoasca*, containing a hallucinogen regulated under the Controlled Substances Act. *O*

---

[1]When we decided *Antoine* the Department of the Interior had proposed removing the bald eagle from the list of threatened species, but had not then finalized the delisting proposal. *See* 318 F.3d at 921. We suggested that a future final rule might "transform a compelling interest into a less than compelling one, or render a well-tailored statute misproportioned." *Id.* Our review of the record satisfies us, however, that such "transformation" has not occurred.

*Centro Espirita*, 546 U.S. at 425. When the government threatened prosecution, the group filed suit seeking declaratory and injunctive relief, arguing that applying the Controlled Substances Act to its use of *hoasca* violated RFRA. *Id.* at 425-26. The government "conceded that the challenged application of the Controlled Substances Act would substantially burden a sincere exercise of religion by the [group]," but claimed that this burden did not violate RFRA. *Id.* at 426.

**[5]** The Supreme Court rejected the government's primary contention on appeal—"that [the government] has a compelling interest in the *uniform* application of the Controlled Substances Act, such that no exception to the ban on the use of the hallucinogen can be made to accommodate the sect's sincere religious practice." *Id.* at 423. The Court held that "RFRA requires the Government to demonstrate that the compelling interest test is satisfied through application of the challenged law . . . [to the] particular claimant whose sincere exercise of religion is being substantially burdened." *Id.* at 430-31. The Court explained that RFRA requires courts to "look[ ] beyond broadly formulated interests justifying the general applicability of government mandates and scrutinize[ ] the asserted harm of granting specific exemptions to particular religious claimants." *Id.* at 431.

**[6]** We agree with the district court that *O Centro Espirita* and *Antoine* are not clearly irreconcilable. *See Miller*, 335 F.3d at 900 (holding that circuit precedent is binding unless "the relevant court of last resort [has] undercut the [prior cases's] theory or reasoning"). First, in *Antoine* we considered whether application of BGEPA to the particular defendant, a member of a non-federally-recognized tribe, violated RFRA and thus engaged in the type of "focused inquiry" required by *O Centro Espirita*. *See Antoine*, 318 F.3d at 922-23.

**[7]** Additionally, *O Centro Espirita* dealt with the pursuit of a secular interest, drug prohibition, in a manner that burdened religion; granting an exemption to the Controlled Sub-

stances Act for the 130-member group did not have any effect on other people's religion. *See* 546 U.S. at 432-33. But we recognized in *Antoine*, because there is a fixed supply of eagles that exceeds demand from religious adherents, "the burden on religion is inescapable." 318 F.3d at 923. Granting an exemption for Defendants would alleviate the burden on Defendants' religion but would place additional burdens on members of federally-recognized tribes in the exercise of their religious practices. Nothing in *O Centro Espirita* undercuts the ruling in *Antoine* that this redistribution of burdens does not raise a valid RFRA claim. *See id.* Congress and the Department of the Interior have chosen a means of allocating scarce eagle parts that is "least restrictive" while still protecting our important national symbol.

## C

**[8]** Finally, Defendants contend that *Antoine* was decided on the incorrect premise that the demand for eagle parts exceeds a fixed supply. They argue that the government could remedy the problem of a demand that outstrips supply by increased diligence in salvage and recovery of eagle carcasses. Even if this were true, RFRA does not require the government to make the practice of religion easier. The burden on religion prohibited by RFRA, like the First Amendment's prohibition on limiting free exercise, "is written in terms of what the government cannot do to an individual, not in terms of what the individual can exact from the government." *See Sherbert v. Verner*, 374 U.S. 398, 412 (1963) (Douglas, J concurring). Because the government is not obligated to increase the supply of available carcasses, Defendants cannot be heard to complain that their rights under RFRA are violated by the government's refusal to expand its collection and distribution practices.

## V

**[9]** In *Antoine* we held that individuals like Defendants who are not members of federally-recognized tribes did not have

valid claims that their prosecutions under BGEPA violate RFRA. 318 F.3d at 924. Neither removal of bald eagles from the Endangered or Threatened Species List, the Supreme Court's decision in *O Centro Espirita*, nor the government's eagle recovery methods undermine this holding. The district court correctly denied Defendants' motion to dismiss the information in reliance on the continued viability of *Antoine*.

AFFIRMED.