**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JACK N. WHITAKER; RAMON
PORTILLO, aka Candido Gutierrez-
Elenes; AVELINO AVALOS; EDUARDO
MARTINEZ; VIRGINIA DELGADO, aka
Edna Cabrera; RICARDO CARRIZOZA,
aka Vicente Lopez-Carrizoza;
LAURO ROCHA GAXIOLA; ANTONIO
ROCHA GASTELUM,
              *Plaintiffs-Appellees,*

   v.

GIL GARCETTI; CURTIS A. HAZELL;
DAVID DEMERJIAN; JASON LUSTIG;
COUNTY OF LOS ANGELES,
              *Defendants-Appellants,*

   and

WILLIE WILLIAMS; DAN HARDEN;
HORACIO MARCO; CHUCK
LIVINGSTON; KEITH LEWIS; CITY OF
LOS ANGELES,
              *Defendants.*

No. 05-55629

D.C. No.
CV-99-08196-WJR

JACK N. WHITAKER; RAMON
PORTILLO, aka Candido Gutierrez-
Elenes; AVELINO AVALOS; EDUARDO
MARTINEZ; VIRGINIA DELGADO, aka
Edna Cabrera; RICARDO CARRIZOZA,
aka Vicente Lopez-Carrizoza;
LAURO ROCHA GAXIOLA; ANTONIO
ROCHA GASTELUM,
                    *Plaintiffs-Appellants,*

              v.

GIL GARCETTI; CURTIS A. HAZELL;
DAVID DEMERJIAN; JASON LUSTIG;
COUNTY OF LOS ANGELES; WILLIE
WILLIAMS; DAN HARDEN; HORACIO
MARCO; CHUCK LIVINGSTON; KEITH
LEWIS; CITY OF LOS ANGELES,
                    *Defendants-Appellees,*

No. 05-55690
D.C. No.
CV-99-08196-WJR
OPINION

Appeals from the United States District Court
for the Central District of California
William J. Rea, District Judge, Presiding

Argued and Submitted
March 5, 2007—Pasadena, California

Filed May 10, 2007

Before: Thomas G. Nelson, Susan P. Graber, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Graber

**COUNSEL**

Alison M. Turner, Greines, Martin, Stein & Richland LLP, Los Angeles, California, and Lisa S. Berger, Deputy City Attorney, Los Angeles, California, for the defendants-appellants-cross-appellees.

Philip A. DeMassa, San Diego, California, for the plaintiffs-appellees-cross-appellants.

**OPINION**

GRABER, Circuit Judge:

Eight individual Plaintiffs allege that Defendants, who are individuals and entities associated with the City and County of Los Angeles, intercepted Plaintiffs' telephone calls after having obtained wiretap authorizations by using falsified warrant applications. Plaintiffs also allege that Defendants unconstitutionally concealed the existence of the wiretaps by using

a "handoff" procedure. Plaintiffs sued Defendants under 42 U.S.C. § 1983 for declaratory and monetary relief.[1] The district court granted summary judgment to Plaintiffs on their claim for declaratory relief on the handoff procedure, ruling that the procedure violates the Fourth Amendment. The district court granted summary judgment to Defendants on Plaintiffs' claims for monetary relief, ruling that *Heck v. Humphrey*, 512 U.S. 477 (1994), barred Plaintiffs' claim for damages from the alleged warrant falsification and that Defendants were entitled to qualified immunity on Plaintiffs' claim for damages from the handoff procedure. We hold that Plaintiff Whitaker's claim alleging that the wiretap that intercepted his telephone call was obtained using a falsified warrant application may proceed against Defendants Williams, Lewis, Garcetti, Demerjian, the City of Los Angeles, and the County of Los Angeles; none of the other claims can survive.

## FACTUAL AND PROCEDURAL HISTORY

A. *Overview*

This case involves three sets of Plaintiffs and two sets of Defendants:

— Plaintiff Jack Whitaker, a lawyer;

— Plaintiffs Ramon Portillo, Avelino Avalos, Eduardo Martinez, Virginia Delgado, and Ricardo Carrizoza ("Portillo Plaintiffs"), who possessed 60 kilograms of cocaine;

— Plaintiffs Lauro Gaxiola and Antonio Gastelum, who possessed 190 kilograms of cocaine;

---

[1]Plaintiffs also sued under California law. Some Plaintiffs procedurally defaulted the state law claims. A jury found in favor of Defendants on the remaining state law claims, and no Plaintiff appeals that verdict. Accordingly, only the federal claims are before us.

—  Defendants Gil Garcetti, Curtis Hazell, David
   Demerjian, and Jason Lustig, who worked in
   the Los Angeles District Attorney's office, and
   the County of Los Angeles ("County Defen-
   dants"); and

—  Defendants Willie Williams, Dan Harden,
   Horacio Marco, Chuck Livingston, and Keith
   Lewis, who worked in the Los Angeles Police
   Department, and the City of Los Angeles ("City
   Defendants").

As summarized by the district court:

   The events that gave birth to the instant dispute
   were two separate narcotics wiretap investigations
   conducted by the Los Angeles Police Department
   ("LAPD"). The first investigation revolved around
   Downey Communications ("Downey" and "the
   Downey wiretaps"), while the second revolved
   around the Atel Cellular and Pager Company ("Atel"
   and "the Atel wiretaps"). LAPD investigators sup-
   posedly suspected these companies of facilitating
   drug deals by providing cellular telephone and digi-
   tal paging services to narcotics traffickers and
   money launderers. The Defendants then submitted to
   the Los Angeles Superior Court applications for
   wiretap orders, which included sworn affidavits in
   order to establish probable cause against Downey
   and Atel. In relying on the sworn statements within
   the affidavits, the Superior Court issued wiretap
   orders for the Downey and Atel wiretaps. Thus, the
   wiretaps were supposedly designed to further inves-
   tigate the suspected criminal activity of Downey
   Communications and Atel Cellular and Pager Com-
   pany, and their respective principals and employees.

   . . . The Los Angeles Superior Court granted the
   application to intercept nine telephone lines [of

Downey] on November 8, 1994. Due to the numerous extensions of the wiretap order and expansions in the number of telephone lines tapped, Defendants intercepted over 30,000 conversations that took place across thirty Downey telephone lines for a duration of 11 months.

. . . The Los Angeles Superior Court granted the application to intercept twenty-two telephone lines [of Atel] on May 21, 1996. Due to the myriad of extensions sought and obtained, Defendants were able to intercept dozens of thousands of conversations over the course of twenty-two months.

. . . [T]he Downey and Atel wiretaps uncovered substantial criminal activity, although none on the part of any of the putatively targeted parties. While intercepting calls pursuant to these broad and enduring wiretaps, Defendants became aware of suspicious conduct on the part of Plaintiffs, although none of the Plaintiffs were so much as named in the wiretap orders or under investigation by the LAPD at the time of the orders. In other words, Plaintiffs were mere clients of Downey or Atel, or merely involved in conversations with clients of Downey or Atel, but as a result of the two wiretaps, were indirectly subjected to electronic surveillance. These electronic surveillances served as the soil out of which the investigations against Plaintiffs originally grew.

*Whitaker v. Garcetti*, 291 F. Supp. 2d 1132, 1136-37 (C.D. Cal. 2003) (footnotes omitted).

Plaintiffs allege that Defendants intentionally concealed the existence of the wiretaps from them through the use of a "handoff" procedure. By Defendants' own admission,

[t]he logistics of the procedure are rather simple. An investigative unit applies for and obtains a wiretap

order from a judge. Pursuant to the wiretap order, the investigative unit conducts electronic surveillance and gathers specific evidence of imminent criminal conduct. Rather than arriving at the scene and making arrests after observing the criminal conduct, the investigating unit transmits the information to another unit without expressly stating that the delivering unit obtained the information via a wiretap. The receiving unit is given both the specific information gathered through the wiretap and the critical instruction to "investigate" the conduct, which, in law enforcement code, . . . signifies that the receiving unit should arrive at the crime scene and, rather than execute an arrest, observe the illicit conduct in order to obtain what law enforcement refers to as "independent" probable cause.

Upon acquiring this so-called "independent" probable cause, the receiving unit either makes an immediate arrest or obtains a search warrant on the *sole* basis of the so-called "independent" probable cause. The criminally accused is then prosecuted without ever knowing that he was subjected to the wiretap surveillance, as no mention of the wiretap is made in any police reports, through any discovery disclosures, or by any testifying detectives at hearings or at trial (the testifying detectives, non-coincidentally, belong to the receiving unit). The conviction follows, yet the very existence of the wiretap is concealed from the criminally accused, in order to permit the survival of any pending investigations revolving around the wiretap.

*Id.* at 1138 (footnotes omitted).

B.   *The Three Sets of Plaintiffs*

Each set of Plaintiffs raises claims about the wiretaps and the handoff procedure from a different perspective.

## 1. *Whitaker*

On May 22, 1995, Whitaker, a lawyer, received a telephone call from a client. An LAPD detective intercepted the call. During the conversation, Whitaker and his client discussed plea bargaining and witness interviews. Police never arrested Whitaker or charged him with a crime.

## 2. *Portillo Plaintiffs*

On June 18, 1997, LAPD detectives were told to surveil a location, allegedly based on interceptions of the Portillo Plaintiffs' telephone calls. From the surveilled location, detectives followed a vehicle to a residence. After this surveillance, police obtained a search warrant and seized 60 kilograms of cocaine and $124,000 in cash. Police arrested Portillo, Avalos, Martinez, Delgado, and Carrizoza.

On October 17, 1997, the Portillo Plaintiffs pleaded guilty. Portillo was sentenced to 10 years' imprisonment, Avalos was sentenced to 15 years' imprisonment, Martinez was sentenced to 10 years' imprisonment, Delgado was sentenced to 182 days' imprisonment plus 3 years of probation, and Carrizoza was sentenced to 17 years' imprisonment. On May 29, 1998, the Portillo Plaintiffs' counsel of record received notice about the existence of the wiretaps, but the notice did not state whether the Portillo Plaintiffs' calls had been intercepted.

## 3. *Gaxiola and Gastelum*

On May 23, 1996, an LAPD detective was told to surveil a location, allegedly based on interceptions of Gaxiola's and Gastelum's telephone calls. From that location, the detective followed Gastelum. After this surveillance, police obtained a search warrant for two residences and seized 190 kilograms of cocaine, $400,000 in cash, an assault rifle, and drug ledgers. Police arrested Gaxiola and Gastelum.

In June 1997, Gaxiola and Gastelum received notice about the wiretaps and the interception of telephone numbers that they identified as their own. On December 16, 1998, each pleaded guilty and was sentenced to 8 years' imprisonment.[2]

## C. *Procedural Background*

On August 12, 1999, Plaintiffs filed suit against Defendants.[3] Plaintiffs sued the individual Defendants under 42 U.S.C. § 1983 for unlawfully intercepting their telephone calls and for intentionally concealing the interception. Plaintiffs sued the City and County under § 1983 for maintaining an unlawful policy, custom, practice, and usage, and for failing to instruct, supervise, control, or discipline their employees. Plaintiffs also brought claims against all Defendants under California law for unlawfully intercepting their telephone calls.

In addition to asking for damages and declaratory relief, Plaintiffs sought a preliminary injunction against Defendants' use of the handoff procedure. The district court denied Plaintiffs' request for a preliminary injunction. In addition, the court "dismisse[d] the § 1983 claims based on failure to provide notice of the wiretap surveillance asserted by Plaintiffs who were unnamed [in the wiretap order application] and overheard but not charged with the commission of a crime as a result of the surveillance." The district court did not identify Whitaker by name, but this ruling applied solely to his handoff claim. The district court never entered judgment on its order. Nevertheless, Plaintiffs appealed the district court's denial of a preliminary injunction. We affirmed the denial. *Whitaker v. Garcetti*, 11 F. App'x 921, 922 (9th Cir. 2001) (unpublished decision).

---

[2]In its order on November 17, 2003, the district court incorrectly stated that Gaxiola and Gastelum were convicted following a trial.

[3]Gaxiola and Gastelum joined as Plaintiffs on January 11, 2000, in the First Amended Complaint.

Plaintiffs filed a Second Amended Complaint, renewing their claims, and all parties moved for summary judgment. On November 17, 2003, the district court issued an opinion granting in part and denying in part Plaintiffs' and Defendants' motions for summary judgment. *Whitaker*, 291 F. Supp. 2d 1132. The court analyzed Plaintiffs' complaint as alleging two cognizable constitutional violations: (1) violation of the Fourth Amendment for obtaining the wiretap warrant through judicial deception ("judicial deception claim"), and (2) violation of the Fourth Amendment for maintaining the handoff procedure ("handoff claim"). *Id.* at 1142.

The district court granted summary judgment to Defendants on Plaintiffs' judicial deception claim. The court reasoned that "a jury after proper witness testimony and cross-examination could reasonably find for Plaintiffs." *Id.* at 1143. However, "a jury finding on the judicial deception issue in favor of Plaintiffs would necessarily imply the reversal of Plaintiffs' earlier convictions." *Id.* at 1144. Thus, the claim was barred by *Heck*, 512 U.S. 477. *Whitaker*, 291 F. Supp. 2d at 1145. In so ruling, the district court referred only to "Plaintiffs" generally, rather than examining the individual claims of each set of Plaintiffs.

The district court granted summary judgment to Plaintiffs on their claim for declaratory relief on the per se unconstitutionality of the handoff procedure. "For purposes of isolating the constitutional permissibility of the wiretap 'hand off' procedure, the [c]ourt *assume[d] arguendo* the legality of the initial wiretap." *Id.* at 1151 n.39. The court then ruled that "preserving the substance of the Fourth Amendment, respecting the constitutional principles built into the Federal Wiretapping Statute, and applying a proper understanding of the notion of 'independence' all demand[ed] holding the wiretapping 'hand off' procedure per se unconstitutional." *Id.* at 1152. *Heck* did not apply because *Heck* "repeated, time and time again, that the § 1983 claims to be barred . . . were spe-

cifically restricted to claims for money damages." *Id.* at 1152 n.44.

The district court granted summary judgment to Defendants on Plaintiffs' claim for damages from the handoff procedure. The court ruled that "Defendants are undoubtedly entitled to qualified immunity on this claim, since [the district court's] constitutional holding obviously was not 'clearly established' at the time of the activity." *Id.* at 1153. The district court did not discuss the applicability of *Heck* to the handoff claim for damages.

Finally, the district court denied Defendants' motion for summary judgment on Plaintiffs' state law claims. The district court never entered judgment on the November 17, 2003, order.

After the district court issued its order, the state law claims of some Plaintiffs went to a jury.[4] On May 7, 2004, the jury found that no Plaintiff had proved by a preponderance of the evidence that any Defendant had intercepted his or her telephone call. The district court entered judgment in favor of Defendants on Plaintiffs' state law claims. No party appeals a state law claim.

On December 10, 2004, the County Defendants filed a motion to alter or amend the judgment or order regarding Plaintiffs' § 1983 claims. On March 30, 2005, the district court denied the motion. The district court never entered judgment on the order.

On April 4, 2005, Plaintiffs filed a request for a unified judgment because the district court had not entered judgment on its November 17, 2003, order. On April 26, 2005, the County Defendants filed a notice of appeal from the district court's grant of declaratory relief on Plaintiffs' handoff claim.

---

[4]The remaining Plaintiffs procedurally defaulted their state law claims.

The next day, Plaintiffs filed a motion for attorney fees as prevailing plaintiffs in reliance on the district court's grant of declaratory relief. The following day, Plaintiffs filed a notice of appeal from the district court's grant of declaratory relief and partial grant of summary judgment in favor of Defendants. On May 16, 2005, Plaintiffs filed a motion to enter a unified judgment.[5] The City Defendants did not file a notice of appeal.

On June 16, 2005, the district court denied Plaintiffs' request for attorney fees. The district court never ruled on Plaintiffs' motion for a unified judgment, nor did it enter judgment on its attorney fees order. Plaintiffs did not file a notice of appeal on their claim for attorney fees.

## STANDARDS OF REVIEW

We review de novo a district court's grant of summary judgment, *Buono v. Norton*, 371 F.3d 543, 545 (9th Cir. 2004); a district court's dismissal under *Heck*, *Osborne v. Dist. Attorney's Office*, 423 F.3d 1050, 1053 (9th Cir. 2005); a district court's grant of declaratory relief, *DP Aviation v. Smiths Indus. Aerospace & Def. Sys. Ltd.*, 268 F.3d 829, 840 (9th Cir. 2001); and a district court's decision on qualified immunity, *Beier v. City of Lewiston*, 354 F.3d 1058, 1064 (9th Cir. 2004). We review for abuse of discretion a district court's award of attorney fees pursuant to 42 U.S.C. § 1988. *Karam v. City of Burbank*, 352 F.3d 1188, 1192 (9th Cir. 2003). In general, we may affirm the district court on any ground supported by the record. *Lambert v. Blodgett*, 393 F.3d 943, 965 (9th Cir. 2004).

---

[5]The City Defendants had opposed Plaintiffs' request for attorney fees by arguing, in part, that the district court never had entered judgment on its grant of declaratory relief.

## DISCUSSION

A.  *Although the district court violated Federal Rule of Civil*
    *Procedure 58, Plaintiffs waived any objection by timely*
    *appealing.*

As a preliminary matter, Plaintiffs argue that the district
court erred by failing to enter a single judgment because the
judgments entered in this case do not comport with Federal
Rule of Civil Procedure 58. Plaintiffs contend that the case
should be sent back to the district court for a proper entry of
judgment.

**[1]** Under Rule 58, with a few exceptions not applicable
here, "[e]very judgment and amended judgment must be set
forth on a separate document." Fed. R. Civ. P. 58(a)(1). The
district court violated Rule 58 when it failed to enter a sepa-
rate judgment on its order denying Plaintiffs' motion for a
preliminary injunction on May 24, 2000; its order granting
and denying in part Plaintiffs' and Defendants' motions for
summary judgment on November 17, 2003; its order denying
the County Defendants' motion to alter or amend judgment on
March 30, 2005; and its order denying Plaintiffs' request for
attorney fees on June 16, 2005. Plaintiffs repeatedly brought
the lack of separate judgments to the district court's attention,
and the court never addressed Plaintiffs' concerns.

**[2]** But "[t]he sole purpose of the separate-document
requirement, which was added to Rule 58 in 1963, was to
clarify when the time for appeal . . . begins to run." *Bankers
Trust Co. v. Mallis*, 435 U.S. 381, 384 (1978) (per curiam).
"A failure to set forth a judgment or order on a separate docu-
ment when required by Federal Rule of Civil Procedure
58(a)(1) does not affect the validity of an appeal from that
judgment or order." Fed. R. App. P. 4(a)(7)(B). "[N]either the
Supreme Court nor this court views satisfaction of Rule 58 as
a prerequisite to appeal. A ruling is final . . . if it (1) is a full
adjudication of the issues, and (2) clearly evidences the

judge's intention that it be the court's final act in the matter." *Casey v. Albertson's Inc.*, 362 F.3d 1254, 1258 (9th Cir. 2004) (citations and internal quotation marks omitted). Thus, "when the parties treat a fully dispositive summary judgment order as if it were a final judgment, the requirement in Federal Rule of Civil Procedure 58 that the judgment 'be set forth on a separate document' can be waived." *Id.* at 1256 (citing *Bankers Trust*, 435 U.S. at 382).

**[3]** In this case, with the exception of Plaintiffs' later claim for attorney fees, *see infra* Part C, and their state law claims, which proceeded to trial and are not before us on appeal, the district court's order on November 17, 2003, disposed of all remaining claims as to all parties. And as they did with the district court's order on May 24, 2000, the parties treated it as a final judgment. Plaintiffs and the City Defendants did dispute the final nature of the order before the district court. Nevertheless, Plaintiffs and the County Defendants appealed to us as if the order were a final judgment, the City Defendants defend against Plaintiffs' cross-appeal as if the order were a final judgment, and no party argues (nor do we find) that any appeal of the order was untimely. In these circumstances, we hold that Plaintiffs waived the Rule 58 requirement for separate judgments.

B. Heck *bars all Plaintiffs except Whitaker from bringing suit.*

Throughout its order of November 17, 2003, the district court referred generally to "Plaintiffs," without differentiating their claims and circumstances. But the district court previously had denied Plaintiffs' motion to proceed as a class, a ruling that Plaintiffs did not appeal. Thus, we must determine the viability of each claim as to each Plaintiff. *See Sacks v. Office of Foreign Assets Control*, 466 F.3d 764, 771 (9th Cir. 2006) ("Article III standing requires the plaintiff to establish standing for each challenge he wishes to bring and each form of relief he seeks."), *cert. denied*, 2007 WL 121145 (U.S.

Apr. 16, 2007) (No. 06-948); *Ellis v. City of La Mesa*, 990 F.2d 1518, 1523 (9th Cir. 1993) ("[E]ach plaintiff must 'show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant.' " (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982))).

Plaintiffs cite *Watt v. Energy Action Educational Foundation*, 454 U.S. 151, 160 (1981), and *Laub v. United States Department of Interior*, 342 F.3d 1080, 1086 (9th Cir. 2003), for the proposition that one plaintiff can create standing for all plaintiffs. However, *Watt* and *Laub* are inapposite. Each concerned judicial review of an administrative action where all plaintiffs raised the same questions of fact and law. By contrast, this case does not concern a single administrative action, and the factual circumstances of Plaintiffs are not identical. We turn then, to a consideration of each set of Plaintiffs.

1.    *Whitaker has standing, but only on the judicial deception claim.*

Whitaker alleges that Defendants falsified the warrant application for the wiretap that intercepted his telephone call, and he challenges the constitutionality of the handoff procedure. He seeks damages under the judicial deception claim and both declaratory relief and damages under the handoff claim. Defendants do not dispute the fact that Whitaker's call was intercepted.

a.    *Whitaker's judicial deception claim*

[4] A seizure conducted pursuant to a warrant obtained by judicial deception violates the Fourth Amendment. *Butler v. Elle*, 281 F.3d 1014, 1024 (9th Cir. 2002) (per curiam). Defendants raise three defenses to Whitaker's claim of judicial deception, none of which we find persuasive.

First, the County Defendants argue that Whitaker waived this claim by failing to raise it in Plaintiffs' opening brief. Although the organization of the brief could have been more clear, Plaintiffs' opening brief explicitly argued:

> Whitaker still has standing to assert the loss of privacy and seek money damages based on the illegal interception themselves. The district court found Whitaker was not entitled to notice of the interception since he was neither named [n]or criminally charged. This ground, however, does not mean Whitaker does not have standing to pursue his other claims.

Whitaker's judicial deception claim therefore was raised sufficiently in the opening brief.

[5] Second, both sets of Defendants argue, and the district court held, that *Heck*, 512 U.S. 477, bars all Plaintiffs' claims of judicial deception. As discussed in depth in Part B.2, *Heck* bars a plaintiff from bringing suit under § 1983 if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Id.* at 487. But Whitaker never was arrested or charged with a crime, much less convicted of one. That being so, *Heck* is inapplicable to his claims.[6]

[6] Third, both sets of Defendants argue that they are entitled to qualified immunity. "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.' The privilege is 'an immunity from suit rather than a mere defense to liability.' " *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (emphasis omitted) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

---

[6]In relying on *Heck* to grant summary judgment to Defendants on all Plaintiffs' claims of judicial deception, the district court appears simply to have overlooked Whitaker.

When an individual sues a government official for violation of a constitutional right, the official is entitled to qualified immunity unless (1) the facts alleged, viewed in the light most favorable to the individual asserting the injury, show that the official violated a constitutional right, and (2) the contours of the right were sufficiently clear so that a reasonable official would understand that his conduct violated that right. *Id.* at 201-02. When an individual sues a local government for violation of a constitutional right, the municipality is liable if the individual can establish that the local government "had a deliberate policy, custom, or practice that was the 'moving force' behind the constitutional violation he suffered." *Galen v. County of L.A.*, 477 F.3d 652, 667 (9th Cir. 2007) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694-95 (1978)). "[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. "In this circuit, a claim of municipal liability under [§] 1983 is sufficient to withstand a motion to dismiss even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice." *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1127 (9th Cir. 2002) (internal quotation marks omitted).

**[7]** Here, Plaintiffs' Second Amended Complaint speaks in generalities regarding actions of "Defendants." But an individual defendant is stripped of qualified immunity only if he personally violated a plaintiff's constitutional rights. *Baker v. McCollan*, 443 U.S. 137, 142 (1979) ("[A] public official is liable under § 1983 only if he causes the plaintiff to be subjected to deprivation of his constitutional rights." (emphasis and internal quotation marks omitted)). Thus, we must examine the allegations against each Defendant as they pertain to Whitaker.

**[8]** Whitaker's call was intercepted as part of the Downey wiretap. The allegations in the complaint concerning the Downey wiretap are: Defendant Lewis falsified an affidavit for the warrant application; Defendants Williams and Garcetti

authorized and approved the falsified application; Defendant Demerjian was aware of, monitored, and approved the application; the falsification of the application conformed to the official policy, custom, or practice of the City and County; and the City and County failed to train these officials adequately. Viewing the allegations of judicial deception as true, *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004), Whitaker alleges facts that show that Defendants Williams, Lewis, Garcetti, and Demerjian violated his Fourth Amendment rights, and he alleges that those officials operated pursuant to an official policy, custom, or practice of the City and County of Los Angeles.

**[9]** Whitaker thus has alleged facts sufficient to make out a claim of judicial deception against Defendants Williams, Lewis, Garcetti, Demerjian, the City of Los Angeles, and the County of Los Angeles. In addition, the contours of the Fourth Amendment right against judicial deception were clearly established at the time of the events at issue. *See Butler*, 281 F.3d at 1024 (quoting *Hervey v. Estes*, 65 F.3d 784, 788-89 (9th Cir. 1995), for the elements of a judicial deception claim). Therefore, we hold that Defendants Williams, Lewis, Garcetti, Demerjian, the City of Los Angeles, and the County of Los Angeles are *not* entitled to qualified immunity on Whitaker's claim of judicial deception. By contrast, the complaint does not implicate the remaining Defendants in any way in the judicial deception of the Downey wiretap and, consequently, the interception of Whitaker's telephone call. Thus, the district court properly granted summary judgment on Whitaker's judicial deception claim to Defendants Harden, Marco, Livingston, Hazell, and Lustig.

b. *Whitaker's handoff claim*

**[10]** Whitaker challenges the constitutionality of the handoff procedure, but the district court dismissed Whitaker's handoff claim in its order of May 24, 2000. Although the court never entered judgment on the dismissal, Whitaker pro-

ceeded as if he had been dismissed. He acknowledged the dismissal in Plaintiffs' opening brief, and he failed to dispute or challenge it. Instead, he merely stated:

> The district court found Whitaker was not entitled to notice of the interceptions since he was neither named [n]or nominally charged. This ground, however, does not mean Whitaker does not have standing to pursue his *other* claims.

(Emphasis added.) Accordingly, Whitaker waived any objection to the lack of a separate judgment on the district court's dismissal order, *see Casey*, 362 F.3d at 1256 ("[W]hen the parties treat a fully dispositive summary judgment order as if it were a final judgment, the requirement in Federal Rule of Civil Procedure 58 that the judgment 'be set forth on a separate document' can be waived."), and waived any challenge to the district court's dismissal of the handoff claim, *see Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("[O]n appeal, arguments not raised by a party in its opening brief are deemed waived."). We must dismiss Whitaker's challenge to the handoff procedure.

###    2.    Heck *bars the Portillo Plaintiffs and Gaxiola and Gastelum from bringing suit.*

The Portillo Plaintiffs—Portillo, Avalos, Martinez, Delgado, and Carrizoza—and Gaxiola and Gastelum allege that Defendants falsified the warrant application for the wiretap that intercepted their telephone calls, and they challenge the constitutionality of the handoff procedure. They seek damages under their judicial deception claim and both declaratory relief and damages under their handoff claim.

**[11]** The district court ruled that *Heck*, 512 U.S. 477, barred Plaintiffs' judicial deception claims but did not bar their handoff claims. In *Heck*, the Supreme Court held that,

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. *A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.*

512 U.S. at 486-87 (emphasis added) (footnote omitted). If "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence," then "the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487. In addition, "the principle barring collateral attacks— a longstanding and deeply rooted feature of both the common law and [the Supreme Court's] own jurisprudence—is not rendered inapplicable by the fortuity that a convicted criminal is no longer incarcerated." *Id.* at 490 n.10. The Supreme Court later clarified that *Heck*'s principle applies regardless of the form of remedy sought. "[A] claim for declaratory relief and money damages . . . that necessarily impl[ies] the invalidity of the punishment imposed[ ] is not cognizable under § 1983." *Edwards v. Balisok*, 520 U.S. 641, 648 (1997).

**[12]** The Supreme Court left open the question whether *Heck*'s bar applies to Fourth Amendment violations. *See Heck*, 512 U.S. at 487 n.7 ("[A] suit for damages attributable to an allegedly unreasonable search *may* lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction." (emphasis added)). However, this court since has answered that question in the affirmative:

We believe that the Second and Sixth Circuits have taken the better approach and therefore hold that a § 1983 action alleging illegal search and seizure of evidence upon which criminal charges are based does not accrue until the criminal charges have been dismissed or the conviction has been overturned. Such a holding will avoid the potential for inconsistent determinations on the legality of a search and seizure in the civil and criminal cases and will therefore fulfill the *Heck* Court's objectives of preserving consistency and finality, and preventing "a collateral attack on [a] conviction through the vehicle of a civil suit."

*Harvey v. Waldron*, 210 F.3d 1008, 1015 (9th Cir. 2000) (alteration in original) (quoting *Heck*, 512 U.S. at 484).

[13] Here, the Portillo Plaintiffs and Gaxiola and Gastelum claim that Defendants committed judicial deception to obtain the wiretap warrants and then impermissibly hid the existence of, and evidence produced by, those wiretaps—evidence that triggered the police investigations and state prosecutions against them. In other words, they challenge the search and seizure of the evidence upon which their criminal charges and convictions were based. *Heck* and *Harvey* bar such a collateral attack through the vehicle of a civil suit.

[14] The district court ruled that *Heck* did not bar Plaintiffs' request for declaratory relief on the handoff procedure because *Heck* involved only a suit for monetary damages.[7] *Whitaker*, 291 F. Supp. 2d at 1152 n.44. The court distin-

---

[7]Curiously, the district court did not discuss the applicability of *Heck* to Plaintiffs' request for damages on their handoff claims. Instead, the district court granted summary judgment to Defendants on the basis of qualified immunity. *Whitaker*, 291 F. Supp. 2d at 1153. We see no reason why *Heck* does not apply equally to both of Plaintiffs' claims for damages, and Plaintiffs do not proffer one.

guished *Edwards*, 520 U.S. 641, in which a plaintiff sued for both declaratory relief and damages, on the basis that *Edwards* involved good time credits in prison and declaratory relief would have been "a toothless bite," whereas, in this case, having the handoff procedure declared unconstitutional would "have severely sharp teeth." *Whitaker*, 291 F. Supp. 2d at 1152 n.44. But nowhere in *Heck* or *Edwards* does the Supreme Court say that application of the doctrine depends on the sharpness of the proposed relief's bite. Instead, the sole dispositive question is whether a plaintiff's claim, if successful, would imply the invalidity of his conviction. *Harvey* and Plaintiffs' theory of the case answer that question in the affirmative.

Plaintiffs also argue for a "belated discovery" exception to *Heck* for individuals who, because of a defendant's actions, do not discover a constitutional violation until after their confinement ends. They argue that Plaintiffs were "kept in the dark by the Defendants and the only way they have been kept from seeking relief during their confinement was due to Defendants' successful concealment." We need not reach this question. Assuming without deciding that such an exception should exist, no Plaintiff would qualify for it. Contrary to Plaintiffs' flat assertion, the Portillo Plaintiffs knew about the handoff procedure less than eight months after they pleaded guilty, while each either was in jail or on parole, and Gaxiola and Gastelum knew about the handoff before they pleaded guilty. Indeed, when Plaintiffs filed their first complaint in 1999, all Plaintiffs (with the exception of Whitaker, who was not convicted of any crime) remained in prison or on parole.

At oral argument, Plaintiffs asserted for the first time that the judicial deception claim is sufficiently attenuated from the evidence to avoid the bar of *Heck*. This new argument runs counter to Plaintiffs' theory throughout this case—that an unbroken chain linked the improper, undisclosed wiretaps to the surveillance and the evidence used against Plaintiffs at trial. It is too late for Plaintiffs to change theories now. *See*

*Smith*, 194 F.3d at 1052 ("[O]n appeal, arguments not raised by a party in its opening brief are deemed waived."); *Monetary II Ltd. P'ship v. Comm'r*, 47 F.3d 342, 347 (9th Cir. 1995) ("As a general rule, an appellate court will not consider arguments which were not first raised before the district court, absent a showing of exceptional circumstances." (internal quotation marks omitted)).

**[15]** In short, we hold that *Heck* bars Portillo, Avalos, Martinez, Delgado, Carrizoza, Gaxiola, and Gastelum from bringing suit for declaratory relief or damages on their judicial deception and handoff claims.

C.   *We lack jurisdiction over Plaintiffs' request for attorney fees.*

Plaintiffs asked the district court for attorney fees as prevailing plaintiffs under 42 U.S.C. § 1988. The court denied their request, and Plaintiffs raised the issue in their opening brief. However, Plaintiffs never filed a notice of appeal on this claim as required by Federal Rule of Appellate Procedure 3(a)(1).

On April 28, 2005, Plaintiffs filed a notice of appeal from the district court's partial grant of summary judgment to Defendants. On June 16, 2005, the district court denied Plaintiffs' request for attorney fees. Plaintiffs neither amended their prior notice of appeal nor filed a new notice.

> It is the filing of a notice of appeal that invokes our jurisdiction and establishes the issues to be addressed. A timely notice of appeal from the judgment or order complained of is *mandatory and jurisdictional*. Where no notice of appeal from a post-judgment order [regarding] attorneys' fees is filed, the court of appeals lacks jurisdiction to review the order.

*Culinary & Serv. Employees Union v. Haw. Employee Benefit Admin., Inc.*, 688 F.2d 1228, 1232 (9th Cir. 1982) (emphasis added) (citations omitted).

**[16]** Plaintiffs argue that, under Federal Rule of Appellate Procedure 4, their notice of appeal from the district court's partial grant of summary judgment automatically pended until the district court decided their request for attorney fees and, therefore, that the notice of appeal encompasses the attorney fees claim. In certain circumstances, a motion for attorney fees can toll the deadline for filing a notice of appeal. Fed. R. App. P. 4(a)(4)(A)(iii). In addition, if a party files a notice of appeal before the district court has decided a motion for attorney fees, the notice does not become effective until the court decides the motion. Fed. R. App. P. 4(a)(4)(B)(i). But, even so, a party wishing to challenge the attorney fees decision "must file a notice of appeal, or an amended notice of appeal" specifying its appeal of that decision. Fed. R. App. P. 4(a)(4)(B)(ii); Fed. R. App. P. 3(c)(1)(B). Plaintiffs failed to do either. For that reason, we must dismiss Plaintiffs' request for attorney fees.

## CONCLUSION

Plaintiffs waived the requirement for separate judgments found in Federal Rule of Civil Procedure 58. Their request to remand the case to the district court for an entry of judgment is DENIED.

Whitaker has standing to raise the judicial deception claim, but he failed to allege any involvement by Defendants Harden, Marco, Livingston, Hazell, and Lustig. Therefore, the district court's grant of summary judgment on Whitaker's judicial deception claim to Defendants Williams, Lewis, Garcetti, Demerjian, the City of Los Angeles, and the County of Los Angeles is REVERSED and Whitaker's judicial deception claim against those Defendants is REMANDED. The district court's grant of summary judgment on Whitaker's

judicial deception claim to Defendants Harden, Marco, Livingston, Hazell, and Lustig is AFFIRMED.

*Heck* bars the judicial deception claims of the Portillo Plaintiffs and Gaxiola and Gastelum. The district court's grant of summary judgment to all Defendants on the judicial deception claims of Portillo, Avalos, Martinez, Delgado, Carrizoza, Gaxiola and Gastelum is AFFIRMED.

Whitaker did not appeal the dismissal of his handoff claim, and *Heck* bars the handoff claims of the Portillo Plaintiffs and Gaxiola and Gastelum. Therefore, the district court's grant of declaratory relief is VACATED. We express no view on the constitutionality of the handoff procedure, because the claim was not properly before the district court. Whitaker's handoff claim is DISMISSED. The district court's grant of summary judgment to all Defendants on the handoff damages claims of Portillo, Avalos, Martinez, Delgado, Carrizoza, Gaxiola and Gastelum is AFFIRMED.

Plaintiffs failed to file a notice of appeal or an amended notice of appeal on their request for attorney fees as prevailing plaintiffs. Their request for attorney fees is DISMISSED.

Costs awarded to Defendants except for Defendants Williams, Lewis, Garcetti, Demerjian, the City of Los Angeles, and the County of Los Angeles as to Plaintiff Whitaker, where the parties shall bear their own costs.

AFFIRMED in part, DISMISSED in part, VACATED in part, and REVERSED and REMANDED in part.