# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# THE NINTH CIRCUIT

HELENE SZAJER; ZOLTAN SZAJER,
　　　　　*Plaintiffs-Appellants,*

v.

CITY OF LOS ANGELES; LOS
ANGELES POLICE DEPARTMENT; LOS
ANGELES CHIEF OF POLICE WILLIAM
BRATTON; LOS ANGELES POLICE
DETECTIVE MICHAEL MERSEREAU;
LOS ANGELES POLICE DETECTIVE R.
TOMPKINS; LOS ANGELES POLICE
DETECTIVE YADON; LOS ANGELES
POLICE DETECTIVE CONRADO,
　　　　　*Defendants-Appellees.*

No. 08-57010

D.C. No.
2:07-CV-07433

OPINION

Appeal from the United States District Court
for the Central District of California
Stephen V. Wilson, District Judge, Presiding

Argued and Submitted
November 3, 2010—Pasadena, California

Filed February 11, 2011

Before: Alfred T. Goodwin and Johnnie B. Rawlinson,
Circuit Judges, and Jack Zouhary, District Judge.*

Opinion by Judge Zouhary

---

*The Honorable Jack Zouhary, United States District Judge for the
Northern District of Ohio, sitting by designation.

## COUNSEL

Burton C. Jacobson, Beverly Hills, California, for the plaintiffs-appellants.

Carmen Trutanich, City Attorney, Blithe S. Bock, Deputy City Attorney, for the defendants-appellees.

## OPINION

ZOUHARY, District Judge:

This is a civil rights action filed by Helene and Zoltan Szajer (collectively, "Szajers"), owners and operators of the "L.A. Guns" gun shop in West Hollywood, against the City of Los Angeles ("City"), the Los Angeles Police Department ("LAPD"), and a number of individual LAPD officers (collectively "Appellees"). Following a "sting" operation wherein the Szajers purchased illegal firearms from the LAPD, officers searched the Szajers' gun shop and their personal residence, pursuant to a warrant obtained by LAPD Detective Michael Mersereau. The searches resulted in the discovery of illegal firearms and ammunition in both the gun shop and residence. The Szajers did not contest the validity of the warrant or seek to suppress the evidence obtained during the searches. As part of a plea agreement, the Szajers pled no contest to one count of possession of an illegal assault weapon found in their home.

The Szajers then filed this civil action, alleging that the LAPD executed an illegal search at the gun shop. Defendants filed a motion for summary judgment, which the district court granted and the Szajers now appeal. For the reasons set forth below, we affirm the district court's decision granting summary judgment.

### BACKGROUND

#### The Gun Sale

The circumstances of this action arise from activities on November 17, 2005. On that date, Detective Mersereau used a confidential informant to initiate the undercover sale of firearms, including three illegal assault weapons, to the Szajers at the gun shop. Detective Mersereau audibly monitored the operation, as it took place, through a body wire worn by the

informant. The assault weapons, which required a special permit, included: (1) a Springfield M1A semiautomatic centerfire rifle with flash suppressor; (2) a Whitney Wolverine semiautomatic pistol that accepted a detachable magazine and a threaded barrel; and (3) a Reising submachine gun. The assault weapons were not registered to the informant.

After Zoltan Szajer inspected the weapons, he initially offered the informant $1,800 for all three weapons. Shortly thereafter he told the informant he could not purchase the submachine gun because it may be an illegal weapon, and advised the informant to take that gun to the West Hollywood Sheriff's Department. When the informant refused, Zoltan Szajer offered to take the gun himself to the Sheriff's Department. The Szajers then purchased the other two weapons (the M1A assault rifle without the flash suppressor, which Zoltan Szajer had removed, and the Whitney Wolverine semiautomatic pistol) for $1,600, and the informant left the submachine gun with Zoltan Szajer.

As soon as the informant left, Zoltan Szajer called the West Hollywood Sheriff's Department to request an officer pick up the submachine gun. While Szajer was on the phone, Defendant Mersereau and several other LAPD officers entered the gun shop and, based on the Szajers' purchase of two assault rifles and possession of the Reising submachine gun, detained the Szajers pending the application for a search warrant. Detective Mersereau then drafted an affidavit for a magistrate judge's review.

### The Arrest

In his affidavit, Detective Mersereau included three incidents to establish probable cause. First, he explained that in January 2005, he interviewed Charles Hanks concerning assault weapons that Hanks may have owned. The Hanks interview led to the discovery of an assault weapon last registered to the Szajers' gun shop in 1995. Second, Detective

Mersereau revealed that in January 2005, a confidential informant stated that in the late 1990s, Zoltan Szajer confided that he possessed sixteen machine guns that he kept under the floor boards of his residence. Third, Detective Mersereau described the undercover operation that had taken place in November 2005. A magistrate judge signed the search warrant authorizing the search of the gun shop, the Szajers' residence and vacation home. Pursuant to the search warrant, LAPD officers seized assault weapons and computers at the residence and gun shop.

The Szajers were charged with thirteen criminal counts relating to illegal possession of firearms, including an H & K semiautomatic pistol found in the safe at the Szajers' residence. The Szajers did not contest the validity of the warrant or seek to suppress the evidence obtained during the searches. In February 2007, the Szajers each pled no contest to a single count — felony possession of the H & K pistol. Their convictions have not been overturned, expunged or otherwise invalidated.

**The Civil Action**

Following their no contest plea, the Szajers filed this civil suit, alleging that the City and LAPD officers violated the Szajers' civil rights by conducting illegal searches, and by seizing their personal property. The Szajers also alleged that the LAPD officers were pursuing a City policy "to put all gun stores in the City of Los Angeles out of business by relying on stale information, creating fictitious informants, falsifying information included in search warrants, [and] illegally entering the premises of gun stores and planting evidence." Finally, the Szajers alleged that the City was liable for its failure to train and supervise its officers, which evidenced a policy of condoning "acts which would constitute illegal seizures of lawfully possessed personal property."

Defendants moved for summary judgment, which the district court granted. In its order, the district court held that the

Szajers' claims were barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), as a finding in favor of the Szajers would necessarily imply that their convictions were invalid. The district court further found that the Szajers' claim that the City and the LAPD had a policy or custom to violate the Second Amendment was based on mere speculation, and that the Szajers failed to present evidence sufficient to support their claim against the City for its alleged failure to properly train and supervise LAPD officers. Pursuant to *Monell v. City of New York Dep't of Soc. Serv.*, 436 U.S. 658 (1978), the district court found that the Szajers presented only their own experience with the LAPD as support for their claim and that "municipal liability based upon failure to train cannot be derived from a single incident." The Szajers timely filed this appeal on whether the district court properly concluded their claim was barred by *Heck*. The Szajers do not challenge the district court's dismissal of their *Monell* claims.

## DISCUSSION

### Summary Judgment Standard of Review

This Court reviews the district court's grant of summary judgment *de novo*. *Universal Health Servs., Inc. v. Thompson*, 363 F.3d 1013, 1019 (9th Cir. 2004). "[R]eview is governed by the same standard used by the trial court under Federal Civil Rule 56(c)." *Adcock v. Chrysler Corp.*, 166 F.3d 1290, 1292 (9th Cir. 1999). This Court "must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Universal Health Servs.*, 363 F.3d at 1019 (internal quotation marks omitted). When the underlying facts are not in dispute, the court's only function is to determine whether the district court correctly applied the law. *Id.*

The Szajers argued below that the affidavit for the search warrant omitted material information that misled the magis-

trate, and had the magistrate been provided this information, he would not have authorized the search. On appeal, the Szajers challenge the decision of the district court, alleging: (1) the district court disregarded an exception to the *Heck* doctrine; and (2) this lawsuit is not a direct challenge to the state court convictions.

## The *Heck* Doctrine

In *Heck*, the petitioner was convicted of voluntary manslaughter for killing his wife and was sentenced to a fifteen-year prison term. 512 U.S. at 478. While his criminal appeal was pending, the petitioner filed suit under 42 U.S.C. § 1983 against two prosecutors and an Indiana State Police investigator, alleging that they "had engaged in an 'unlawful, unreasonable, and arbitrary investigation' leading to petitioner's arrest; 'knowingly destroyed' evidence 'which was exculpatory in nature and could have proved [petitioner's] innocence'; and caused 'an illegal and unlawful voice identification procedure' to be used at petitioner's trial." *Id.* at 478-9.

[1] The Court held that in order for an individual to recover damages for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid," the conviction or sentence must be called into question in some way — either through direct appeal, expungement, invalidation by a state tribunal, or by a federal court's issuance of a writ of habeas corpus. *Id.* at 486-87. The Court further explained:

> [W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district

court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

*Id.* at 487. Thus, if finding in favor of a § 1983 plaintiff "would necessarily imply the invalidity of his conviction or sentence . . . the complaint must be dismissed." *Id.*

**[2]** As support for reversal, the Szajers point to footnote seven of the *Heck* opinion where the Court stated: "For example, a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction. Because of doctrines like independent source and inevitable discovery, and especially harmless error, such a § 1983 action, even if successful, would not necessarily imply that the plaintiff's conviction was unlawful." *Id.* at 487 n.7 (citations omitted).

Although footnote seven left open the question of the applicability of *Heck* to Fourth Amendment claims, this Court has since answered that question affirmatively. *See, e.g., Whitaker v. Garcetti,* 486 F.3d 572, 583-84 (9th Cir. 2007); *Harvey v. Waldron,* 210 F.3d 1008, 1015 (9th Cir. 2000), overruled in part on other grounds by *Wallace v. Kato*, 549 U.S. 384, 393-94 (2007).

**[3]** In *Whitaker,* this Court held that *Heck* barred plaintiffs, who were convicted of cocaine possession, from bringing § 1983 claims alleging defendants falsified the warrant application for wiretaps which ultimately produced the evidence that triggered the investigations against them. *Whitaker,* 486 F.3d at 577, 584. This Court stated that the plaintiffs "challenge the search and seizure of the evidence upon which their criminal charges and convictions were based. *Heck* and *Harvey* bar such a collateral attack through the vehicle of a civil

suit." *Id.* Accordingly, § 1983 claims premised on alleged Fourth Amendment violations are not entirely exempt from the *Heck* analysis, as the Szajers suggest.

Nonetheless, the Szajers urge this Court to follow two Seventh Circuit cases: *Copus v. City of Edgerton,* 151 F.3d 646 (7th Cir. 1998) and *Booker v. Ward*, 94 F.3d 1052 (7th Cir. 1996). In those cases, the plaintiffs were allowed to pursue § 1983 claims based on Fourth Amendment violations although their criminal convictions were not challenged. The Seventh Circuit read footnote seven to mean that § 1983 claims based upon Fourth Amendment violations may proceed because *Heck* simply does not bar such claims. *See Copus*, 151 F.3d at 648-49. These holdings, however, are in direct conflict with Ninth Circuit precedent. *See Whitaker,* 486 F.3d at 583-84.

**[4]** We decline to take up the Szajers' invitation to follow the Seventh Circuit's approach because this Court must follow its own precedent. *United States v. Vasquez-Ramos*, 531 F.3d 987, 991 (9th Cir. 2008) (per curiam) ("We are bound by circuit precedent unless there has been a substantial change in relevant circumstances, or a subsequent en banc or Supreme Court decision that is clearly irreconcilable with our prior holding." (internal citations omitted)).

**[5]** The Szajers further argue that *Heck* is inapplicable here because they are challenging only the search of their gun shop, not their conviction for possession of the unregistered weapon found in their home. However, the searches of their residence and gun shop were based on the *same* search warrant and supporting affidavit of Detective Mersereau.

The district court correctly found the magistrate must have relied on the November 17 undercover operation in finding probable cause because, for example, the residence information was so stale that the district court found it "inconceivable" that the magistrate would find probable cause on that

piece of information alone. The information regarding the illegal assault weapon last registered to the Szajers' gun shop in 1995, and the illegal firearms and ammunition stored at their residence in the 1990s, was patently stale because it was five to fifteen years old at the time of the warrant. *See United States v. Lacy*, 119 F.3d 742, 745 (9th Cir. 1997) ("An affidavit must be based on facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time.") (internal quotations omitted).

**[6]** The November 17 undercover operation was the only basis for finding probable cause to search both the gun shop and residence. Yet, the Szajers failed to challenge the search. Just as in *Whitaker*, if the Szajers prevailed on their Section 1983 claim, it would necessarily imply the invalidity of their state court convictions. Their civil claims necessarily challenge the validity of the undercover operation and in doing so imply that there was no probable cause to search for weapons. The conclusion that *Heck* bars such a challenge is buttressed by the fact that the Szajers have not set forth, either on appeal or to the district court below, any other basis for the discovery of the assault weapon found in their home, which formed the basis for their plea and conviction.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the decision of the district court granting summary judgment.