**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



**FILED**

FEB 14 2014

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

PARAPLUIE, INC., a California
corporation,

          Plaintiff - Appellant,

  v.

HEATHER MILLS, an individual,

          Defendant - Appellee.

No. 12-55895

D.C. No. 2:11-cv-02548-MMM-
SS

MEMORANDUM[*]

Appeal from the United States District Court
for the Central District of California
Margaret M. Morrow, District Judge, Presiding

Submitted February 7, 2014[**]
Pasadena, California

Before: KLEINFELD, SILVERMAN, and HURWITZ, Circuit Judges.

Heather Mills is known for being the ex-wife of Beatle Sir Paul McCartney.

Michele Blanchard is a publicist and principal of Parapluie, Inc., a public relations

---

     [*]     This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

     [**]     The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

firm. Blanchard did PR work for Mills from March 2005 to July 2008, but was not paid for the first two years because, as Mills told Blanchard, Mills could not afford the usual rate of $5,000 per month. Eventually, in March 2007, Blanchard spoke with Mills's sister, Fiona, and the two agreed that although Mills could not afford $5,000 per month, she could pay Blanchard $3,000. Beginning in March 2007, Blanchard sent monthly invoices for $3,000, all of which Mills paid. The relationship soured and Blanchard quit in July 2008. The next month she sent Mills a final invoice for $168,000. The final invoice included monthly charges of $5,000 from April 2005 to March 2007, plus $2,000 ($5,000 less the $3,000 Mills had already paid) for services between March 2007 and July 2008. Mills refused to pay. Parapluie sued, claiming Mills had intentionally misrepresented her financial situation and falsely promised to pay Blanchard when Mills got the "big money." The district court granted summary judgment in favor of Mills on both claims and denied Parapluie's request for leave to amend.

We have jurisdiction under 28 U.S.C. § 1291. Orders granting summary judgment are reviewed de novo. Szajer v. City of Los Angeles, 632 F.3d 607, 610 (9th Cir. 2011). The denial of leave to amend is reviewed for abuse of discretion. AE ex rel. Hernandez v. County of Tulare, 666 F.3d 631, 636 (9th Cir. 2012). We

agree with the district court that Parapluie did not produce sufficient evidence to show that a genuine issue of fact existed as to whether Mills's representations were false when made. And because Parpluie failed to show good cause, we find the district court did not abuse its discretion in denying leave to amend. We therefore affirm.

## I. Summary Judgment

Summary judgment will be granted when "there is no genuine dispute as to any material fact." Fed. R. Civ. Pro. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Once the movant has met her initial burden of showing "an absence of evidence" supporting the nonmoving party's case, the burden is on the nonmoving party to show with "specific facts" that there is a genuine issue of fact suitable for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Anderson, 477 U.S. at 250.

### A. *Intentional Misrepresentation*

Parapluie contends that Mills lied about her finances in the spring of 2005 and again in March 2007, saying she "had no money," and "cannot afford" Blanchard's fee, when in fact she could. To survive summary judgment, Parapluie

3

must point to facts showing that Mills's statements were false at the time she uttered them.  See Robinson Helicopter Co. v. Dana Corp., 34 Cal. 4th 979, 990 (2004).  The evidence is not sufficient to show that reasonable fact finders could conclude this was the case.

Mills's testimony ("I would have paid [Blanchard] if I had owed her anything, whether I had sufficient money or not") does not show that she was able to afford Blanchard's services in the spring of 2005 or March 2007.  It establishes only that Mills claims she could find a way to pay her debts regardless of whether she could afford to.

Mills's $30,000 charity bid on a cruise in March 2007 might create a genuine issue of triable fact, except that Mills's credit card payment for the cruise was declined.  Rather than establishing that Mills was able to afford $5,000 for PR services, the charity bid shows quite the opposite.

As for Fiona's request that Blanchard send her rental listings in Malibu and Hollywood Hills, this does not show that Mills had the money, as opposed to the desire, for the real estate.  Nor was it clear that the real estate was even for her sister Heather.  Nor had Fiona specified a price range when she requested the listings.  The fact that Blanchard sent along listings for houses that rented for $80,000 a month speaks to what Blanchard believed about Mills's finances, not of

4

Mills's actual ability to afford this. Mills did rent two "very modest" properties from Blanchard for $2,000 and $3,000 per week. The invoice shows Mills rented the properties for a single week in October 2007, seven months after Mills said, "I don't know if I can pay the entire amount, but I'll do something," and several years after she said she could not afford Blanchard's fee. The subsequent rentals do not show that Mills was lying when she made these statements.

Finally, Parapluie points to a £2.5 million interim payment Mills received in April 2007 as part of her divorce settlement with McCartney. But the payment came two years after Mills's initial statement that she could not afford Blanchard's services. Indeed, Mills received the money the same month she began paying Blanchard $3,000 a month, suggesting, if anything, that her earlier statements were true when made, and that she started paying Blanchard when she got the £2.5 million.

Parapluie has not produced sufficient evidence to create a triable issue as to whether Mills lied about her ability to pay Blanchard's full fee. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Liberty Lobby, Inc., 477 U.S. at 249–50 (internal citations omitted).


### B. Promissory Fraud

5

After Blanchard asked whether Mills might pay her "a little something," Mills agreed, saying "I'll take care of you when I get the big money." Parapluie argues this was a promise to pay Blanchard the regular fee of $5,000 in the future *and* for the work Blanchard had done the previous two years. Parapluie argues that Mills had no intention of keeping her promise when she told Blanchard she would "take care of [her]."

A promise to do something in the future can give rise to fraud when the promise is made with no intention to perform. See Downey Venture v. LMI Ins. Co., 78 Cal. Rptr.2d 142, 161–62 (Cal. Ct. App. 1998). But Mills's statement is too vague to support a concrete promise to pay Blanchard $5,000 per month for future work and for work done two years prior. The invoices Blanchard sent Mills beginning in April 2007 stated the "total amount due" each month was $3,000, plus expenses. These invoices negate any inference that the parties intended a retroactive payment for the same periods for more money.

Parapluie supports a contrary inference from Fiona's statements that although Mills could not afford to pay $5,000, she could afford $3,000, "and would take care of the rest as soon as they received the 'big money.'" Parapluie argues that Fiona's statements can be imputed to Mills because she was acting as Mills's agent. An agency theory of liability was not advanced until summary judgment,

after discovery had closed. Parapluie's evidence for a promise to pay more than Blanchard invoiced for past services is insufficient to establish a genuine issue of fact. The suggested inference has no force as against Blanchard's own invoices stating the "total amount due." The most that a jury could infer is that Blanchard billed, Mills paid the bills, the bills were in fact for the "total amount due" pursuant to their agreement, and there was vague, nonspecific talk about the future of their commercial relationship after Mills got "big money."

Because Parapluie failed to show there are triable issues as to whether a promise was made, the district court properly granted summary judgment in favor of Mills.

## II. Denial of Leave to Amend

In its opposition to summary judgment, Parapluie sought to amend its complaint to add new causes of action for account stated and open book account. Parapluie's request to amend came seven months after the deadline for such requests had passed. Once a schedule has been established it "may be modified only for good cause and with the judge's consent." Fed. R. Civ. Pro. 16(b)(4). Good cause exists to modify a scheduling order when "it cannot reasonably be met despite the diligence of the party seeking the extension." Johnson v. Mammoth

<u>Recreations, Inc.</u>, 975 F.2d 604, 609 (9th Cir. 1992).  Parapluie's request for leave to amend came months after the period for discovery and amendment of pleadings had ended.  Parapluie has given no explanation for why it could not reasonably have sought leave to amend within the deadline set by the scheduling order.  The district court did not abuse its discretion by denying leave to amend.

The order of the district court is **AFFIRMED.**